## CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF SOUTH CAROLINA.

Justices of the Supreme Court during the Period comprised
in this Volume.

HON. WILLIAM D. SIMPSON, CHIEF JUSTICE.
HON. HENRY McIVER, ASSOCIATE JUSTICE.
HON. SAMUEL McGOWAN, "       "

## GEDDES v. BOWDEN.

1. A sub-contractor of a sub-contractor is not entitled under chapter CXX.,
§ 7, of the *Gen. Stat.* of 1872, to a lien for labor performed and materials
furnished upon the building erected.
2. The owners of the property cannot be said to have given their "consent,"
within the meaning of this section, to the furnishing of such labor and
material, nor did the contractors, as such, have any authority from, nor
were they acting for, the owners, in making their contracts with workmen
and others.
3. Sections 8 and 10 of this chapter do not create any right, but relate, simply,
to the enforcement of the lien declared in section 7.
4. On application, here made, leave was granted to petitioner, on terms, to
amend the character of his proceeding against the owners of the premises.

A

Before FRASER, J., Spartanburg, July, 1881.

Petition by John Geddes against R. L. Bowden and others, for the enforcement of a lien on the Merchants' Hotel property in Spartanburg city. The Circuit decree, omitting the statement of such facts as are repeated in the opinion, was as follows:

No notice was given by the "owners" to petitioner that they would not be responsible for the work done or material furnished until after the statement was filed. The "owners" never gave any authority to Maxwell, Lyman & Land, or Maxwell & Lyman, to make any contract with petitioner for them; and while their consent may be assumed that the contractors and sub-contractors should employ others, there is no evidence of their consent to be bound by or become a party to any such agreement.

The agreement between petitioner and Maxwell & Lyman was by parol, and it does not appear clearly at what times the petitioner was to be paid, and I incline to the opinion and find that he was entitled to be paid when his work was done. All that part of the building in which the rock work was used has been finished, and the money paid to Maxwell, Lyman & Land by the "owners" *pro tanto*, leaving still a sufficient balance when the building is completed to pay petitioner's claim.

The contract between the "owners" and "contractors" was a joint contract, and is in writing, and only one or two of the "owners" were present when the contract was made between Maxwell & Lyman and petitioner; and it is not claimed that all of the "owners" ever gave an actual, personal consent to this contract, and there is no evidence of any authority given by the "owners" to either of those who are said to have been present to make any new agreement for them. There was no copartnership between the "owners" in reference to this matter.

In the absence of sufficient proof that there was any contract or agreement on the part of the "owners," or any of them, to pay the petitioner for the rock work, as I understand, his claim relies on the fact that he did this work, or furnished this "labor and materials," under an agreement between himself and Max-

well & Lyman, who were themselves sub-contractors under Maxwell, Lyman & Land, and that the "owners" knew of this contract and his compliance with its terms, and never made any objection, but that he was urged by some of them to go on with his work. It is not claimed that this was a good contract to pay the debt of another, because there was no written evidence of it, and we have found above that there was no contract actually made by the "owners," or any of them. Do these facts, therefore, furnish the evidence of the allegation, that in making the agreement with petitioner, Maxwell, Lyman & Land, or, as appears, Maxwell & Lyman "rigthfully acted for and by the consent of the 'owners'?"

There being in fact no such contract on the part of the owners, or authority to bind them, did the authority grow out of the relations of the parties, and the consent follow from the facts as above established? Or, in other words, can a sub-contractor, or, as in this case, a sub-contractor under a sub-contractor, have a lien on the property of the owners in the absence of any positive agreement between himself and the owners? If so, then the claims on this building will be at least four-fold: 1. To Maxwell, Lyman & Land; 2. Maxwell & Lyman; 3. John Geddes; 4. The laborers who were employed by John Geddes, and paid by him.

In the absence of the complete texts of the acts of the various States on the subject of mechanics' liens, the text-writers give us very little aid in construing the act, and it has had very little judicial interpretation in this State. Resort must be had, therefore, to the words of our act, *Gen. Stat.* 550, *et seq.* The lien is created by section 7, and the subsequent sections only control and limit or provide for its enforcement. They do not profess to create any new right.

If the labor or materials are furnished by virtue of an agreement with the owner, there is no difficulty in the way. What is consent in the sense of the act? There must be a debt by consent of the owner. "*Consent* is an agreement to something proposed, and differs from *assent.*"—*Bouvier's Law Dic.* "*Consent*—We generally use this word in cases where power, rights and claims are concerned. We give consent when we

yield that which we *have a right to withhold.*"—*Webster's Dic.* It seems to me, therefore, that in this section the word "consent" is used in the sense of agreement or contract, if not express, at least implied. Any other construction of the act would seem to be injurious to the interest of those whom the law was intended to protect, and work great hardships to those who are making improvements on their lands.

Such a construction is intimated by the court in *Murray* v. *Earle*, 13 *S. C.* 87; and the case of *Watson* v. *Columbia Bridge Company*, 13 *S. C.* 433, is not inconsistent with it, because in that case the contract was made with Neagle, who was really the owner of the property. The "owners" of the property in this case, under their written agreement with the contractors, had no right to object to any contract which the contractors saw fit to make. Their consent was unnecessary, and their interference would have been impertinent.

It is true that sections 8 and 10 seem to point to a different construction of the seventh section. Bouvier, in his Law Dictionary, under the definition of *consent* gives us an instance, the "implied consent" in cases of estoppel, and if the word "consent" in section 7 is used in this sense, the above construction is not inconsistent with the provisions of sections 8 and 10. However this may be, sections 8 and 10 create no right not given in section 7, and if they cannot be reconciled by the court they can be amended by proper authorities to suit future cases.

Whatever opinions I may have entertained on this subject heretofore, I am satisfied that a proper construction of the act does not give any lien for "labor" or "materials" furnished for a building, which is not based on a debt founded on an agreement express or implied, with the owner of the land or some interest therein. It is therefore ordered and adjudged that the petition in this case be dismissed with costs.

From this decree the petitioner appealed.

*Messrs. Bobo & Carlisle,* for appellant.

*Mr. J. S. R. Thomson,* contra.

March 6th, 1883.   The opinion of the court was delivered by

MR. JUSTICE MCIVER.   The defendants, Bowden and others, who are styled, in the title of the case, "owners," entered into a written contract with their co-defendants, Maxwell, Lyman & Land, styled "contractors," for the construction of a building on nine adjoining lots in the city of Spartanburg; the first floor of which was to be divided into nine stores, and an entrance to the hotel, which embraced the second and third floors of the building.   The stores are the separate property of the several owners of the lots, while the hotel and the entrance thereto belong to them jointly.   The defendants, Maxwell, Lyman & Land, sub-let the contract for the brick and rock work to two of their number, Maxwell & Lyman, and they, in turn, made a sub-contract with the appellant for the rock work.   Under the contract between the owners and Maxwell, Lyman & Land, the latter were to furnish all the material necessary and proper for completing the building and erect and finish the same, in consideration whereof the owners agreed to pay them the sum of $22,500, in six installments, as the work progressed.   All these installments had been paid before these proceedings were commenced, except the last, which was not then payable, as the building had not then been fully completed.

The appellant having completed his contract with Maxwell & Lyman, for the rock work, commenced these proceedings to enforce a lien upon the building and the lots upon which it is situated, under the provisions of chapter CXX., *Gen. Stat.,* 1872, *p.* 550.   The fundamental question raised by the appeal is, whether the appellant, who is a sub-contractor of a sub-contractor, is entitled to the lien which he is here seeking to enforce, and as we are of opinion that he is not, the other questions suggested cannot arise and need not be considered.

It is difficult to understand how a lien can be created, unless there is some debt to be secured by it, and to create a debt there must be some contract, either express or implied, between the parties.   The appellant here is seeking to set up a lien upon the property of persons with whom he has made no contract, either express or implied, but, on the contrary, his claim grows out of a contract made with a third party.   He claims, however, that

he is entitled to this lien under the provisions of the statute above referred to. So that the practical question is, whether, under a proper construction of that statute, the appellant, who is a sub-contractor of a sub-contractor, can claim the benefit of its provisions.

Section 7, of chapter CXX., of the *Gen. Stat.*, above referred to, creates the lien claimed, and is in the following words: "Any person to whom a debt is due for labor performed or furnished, or for materials furnished and actually used in the erection, alteration or repair of any building or structure upon any real estate, by virtue of an agreement with, or by consent of, the owner of such building or structure, or any person having authority from, or rightfully acting for, such owners, in procuring or furnishing such labor or materials, shall have a lien upon such building or structure, and upon the interest of the owner thereof in the lot of land upon which the same is situated, to secure the payment of the debt so due to him, and the costs which may arise in enforcing such lien under this chapter, except as is provided in the following sections."

To entitle a person, therefore, to the lien provided for in this statute, two things must concur. 1st. There must be a debt due to the person claiming the lien "for labor performed" or furnished, or for materials furnished and actually used in the construction of the building upon which the lien is claimed. 2d. Such labor must be performed or materials furnished "by virtue of an agreement with, or by consent of, the owner of such building or structure, or any person having authority from, or rightfully acting for, such owner in procuring or furnishing such labor or materials." In this case there seems to be no doubt that there is a debt due to the appellant for labor performed and materials furnished and actually used in the construction of the building, and the only question is whether such labor was performed and materials furnished "by virtue of an agreement with, or by consent of," the owners, or by virtue of an agreement with, or by consent of, "any person having authority from, or rightfully acting for, such owners." It is not pretended that there was any express agreement between the owners and the appellant, but, on the contrary, the agreement under which the labor and

materials were furnished by the appellant was made with a third party, Maxwell & Lyman.

It is, however, contended that the labor and materials were furnished by appellant with the " consent of " the owners, and it is necessary, therefore, to determine the meaning of the term " consent " as used in this statute. The word " consent " ordinarily implies choice, and one can scarcely be regarded as giving his consent to that which he has no right to object to. In the experience of life a man is oftentimes compelled to accept results, in the sense that he makes no opposition or objection thereto, for the reason that he has no right or power so to do, but he cannot, in any proper sense of the term, be regarded as consenting to them unless he has the right and the power to exercise a choice, to consent or object thereto. As is well said by Mr. Chief Justice Simpson, in *Gray* v. *Walker*, 16 *S. C.* 147, in construing this statute : " Consent here, we think, implies something more than a mere acquiescence in a state of things already in existence. It implies an agreement to that which, but for the consent, could not exist, and which the party consenting has a right to forbid." Now in this case the owners of the property, having made a contract with Maxwell, Lyman & Land to construct the building and furnish all the materials necessary and proper for the purpose, had parted with all power or right of control, and any interference on their part with those who were employed by the contractors would have been, as the Circuit judge says, impertinent. They cannot, therefore, in any proper sense of the term, be said to have given their " consent " to that which they had no right to forbid.

Nor can it be said with any propriety that Maxwell & Lyman, in making the contract with the appellant for the rock work, had any authority from, or were rightfully acting for, the owners. The object which the owners had in view, in letting the entire contract to Maxwell, Lyman & Land, unquestionably was to relieve themselves from the trouble and responsibility of making contracts with the laborers, mechanics and materialmen for the labor and material necessary to be employed in the construction of the building ; and if Maxwell & Lyman, or even Maxwell, Lyman & Land, could be regarded as their agents, in

making all the contracts for such labor and materials, this object would not only be entirely defeated, but they would be placed in a much worse position than if they had made no contract at all.

It is true that some of the terms used in sections 8 and 10 of the statute do seem to point to a construction different from that which we have adopted ; but, as the Circuit judge very properly remarks, these sections are not designed to *create* any right, but simply to control and limit, or provide for the enforcement of the right created by section 7.    The terms used in these subsequent sections must, therefore, be so construed as to conform to the proper construction of the language used in section 7, where the right is created.

The authorities elsewhere do not seem to be in full accord upon the question which we have been considering, and we deem it unnecessary to enter upon a consideration of them, as the construction which we have adopted has received the sanction of this court in two cases, *Murray* v. *Earle,* 13 *S. C.* 89, where the matter was incidentally mentioned, and *Gray* v. *Walker, supra,* where the point was distinctly decided.

There is also another view which supports our construction, derived from the internal evidence furnished by the statute.    In section 47 of the same chapter of the *Gen. Stat., p.* 555, providing for a lien on ships and vessels, sub-contractors are specifically mentioned, while in the section which we are called upon to construe, they are not mentioned at all.    This affords a strong indication that while the legislature intended that class of persons to be protected by the lien provided for in the one case, they had no such intention in the other case.

Finally, the appellant contends that even if this court shall agree with the Circuit judge that the lien which he claims cannot be sustained, yet, under the liberal provisions of the code, his case should be retained and judgment rendered against those who contracted with him for the balance due on such contract, and that he be subrogated to such rights as they may be able to establish against the owners.    This view of the case was not presented in the Circuit Court, and, therefore, this court, which exercises appellate jurisdiction only in cases of this kind, cannot undertake to consider the case in this aspect, and is not

to be understood as intimating any opinion as to the merits of appellant's claim when it is thus presented. But, under the liberal provisions of the code, we see no reason why the appellant should not be permitted to litigate his claim in the new form suggested, and, for this purpose, the case will be remanded to the Circuit Court with leave to the appellant to amend his proceedings in such way as he may be advised is necessary to present his claim in the form suggested, with leave, also, to the defendants to answer or demur to such amended proceedings, and to litigate the claim in its new form, as they may be advised.

The judgment of this court is that the judgment of the Circuit Court, in so far as it adjudges that the appellant has no lien upon the building mentioned, and the lots upon which it is situated, be affirmed; but in so far as it adjudges that the petition be dismissed, that it be reversed. It is further adjudged that the appellant pay all the costs which have accrued up to this time, including the costs of this appeal; that the costs which may hereafter accrue shall be provided for in the judgment hereafter to be rendered, and that the case be remanded to the Circuit Court for such further proceedings as may be necessary to carry out the views herein announced.