503 S.E.2d 717

Melissa QUESINBERRY, Shannon Foxworth, Teresa
Ann Lewis, and Scott Roth, Petitioners,

v.

Paul ROUPPASONG and M.B. Rosbrugh, individually and in
their capacity as police officers; City of Myrtle Beach, a
governmental entity within the State of South Carolina; and
Myrtle Beach Police Department, an agency of the City of
Myrtle Beach, Respondents.

No. 24814.

Supreme Court of South Carolina.

Heard Nov. 6, 1997.
Decided July 13, 1998.
Rehearing Denied Sept. 3, 1998.

590

Ronald W. Hazzard, Myrtle Beach, for petitioners.

Michael W. Battle, of Battle & Vaught, P.A., Conway, for respondents.

WALLER, Justice:

Petitioners brought actions against respondents alleging, *inter alia*, respondents violated their constitutional rights in using excessive force to effect their arrest. Recovery was sought under section 1983, Title 42 of the United States Code.[1]

---

1.  "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

At the close of petitioners' case, the trial judge directed a verdict in favor of respondents.[2]  The Court of Appeals affirmed.  *Quesinberry v. Rouppasong,* Op. No. 96–UP–158 (S.C.Ct.App. filed May 16, 1996).  We granted petitioners a writ of certiorari to review the sole issue of whether the trial judge properly directed verdicts for respondents on the excessive force claims.

## *FACTS* [3]

On the evening of September 15, 1991, the Dutch Deli, a restaurant located on Highway 17 in Myrtle Beach, hosted a party for staff and guests.  All petitioners attended the party.

Petitioner Lewis gave the following account of events.  She had consumed two mixed drinks and was sitting with others on the porch outside the restaurant when a patrol car stopped a vehicle traveling on Highway 17.  A second patrol car arrived.  Lewis and her daughter, petitioner Quesinberry, thought it strange two patrol cars had stopped for one vehicle.

Lewis, a thirty-eight year old photographer interested in obtaining a photograph to enter into a contest, walked across Highway 17 with her camera, intending to ask an officer if she could take a picture.  One of the officers told her to return to the sidewalk.  Lewis complied and was looking at her camera when respondent Rouppasong grabbed her arms.  Lewis told him she did not take a picture.  Thereafter, both Officer Rouppasong and respondent Rosbrugh pulled Lewis's arms behind her back.  Lewis testified the officers handcuffed her

shall be liable to the party injured in ... [any] proper proceeding for redress...."

2.  Petitioners also alleged false arrest and confinement;  outrage;  denial of medical treatment;  and negligent supervision, hiring and training.  The trial judge directed a verdict in respondents' favor on a number of these causes of action;  the jury returned a verdict for respondents on the remainder.

3.  This factual recitation summarizes the evidence petitioners presented during their case in chief.  In affirming the trial court, the Court of Appeals also considered evidence presented by respondents' expert.  We find consideration of this evidence was improper and have disregarded it.

in such a way that she could not stand up straight. When she asked if she was under arrest, she received no response.

By this time, Quesinberry had approached the scene. She informed the officers Lewis was her mother and inquired whether Lewis was under arrest. Lewis told Quesinberry to take pictures. After Quesinberry took one picture, Officer Rouppasong told her to stop. Quesinberry circled around the officers and her mother, snapping pictures. Officer Rouppasong placed Lewis in a patrol car. From the car, Lewis witnessed the arrest of her daughter and of petitioners Foxworth and Roth.

Inside the patrol car, as she was being transported to jail, Lewis asked what she was charged with. Officer Rouppasong replied, "you're drunk." [4] Lewis also complained to Officer Rouppasong about her handcuffs:

> ... Officer Rouppasong got in, got in the car, and I said, "I think these handcuffs must be too tight. I can't feel my wrists." I said, "I can't feel my hands at all. Could you check them?" and he didn't respond, and I said several more times driving to the jail, "Something's wrong with my hands. I can't, I can't feel my hands," ....

After her release from jail, Lewis went to the hospital emergency room where bandages were applied to her arms. She consulted an orthopedic surgeon a month later who diagnosed her with mild carpal tunnel syndrome in both wrists. She ultimately underwent cortisone injections and orthopedic surgery on her wrists.

Petitioner Quesinberry gave the following account of events. She had finished one alcoholic beverage and was beginning to drink a second when she saw her mother walk across Highway 17 towards Officer Rouppasong, turn around, and walk back. Quesinberry went to the parking lot next to the highway, where she saw the officers release the individual they had stopped, come up behind Lewis, grab her arms, and tug and jerk on her camera and purse straps. Quesinberry asked why they were arresting Lewis but received no response. Quesinberry began taking pictures with her own camera. When Officer Rouppasong told her to stop, she replied, "Stop doing

---

4. Lewis was charged with and convicted of public intoxication and resisting arrest.

what? Taking pictures? I have a right to take pictures. This is America. I can take pictures if I want to take pictures."

Officer Rosbrugh grabbed her right arm and jerked it around behind her back up into the air. He forced her onto the hood of a patrol car, told her to spread her legs, and then kicked her legs apart, causing bruises and breaking the straps on her sandals. He then handcuffed her. When Quesinberry asked if she were under arrest, Officer Rosbrugh did not reply. At this point she saw five other people in the parking lot and about ten people on the porch of the Dutch Deli. The people were screaming at the officers, "Why are you arresting her? What is going on?" Officer Rosbrugh placed Quesinberry in the patrol car with her mother.[5]

Petitioner Roth gave the following account of events. He had consumed four or five beers and a "shooter or two" when he saw the officers arrest Lewis and Quesinberry. He and his girlfriend, petitioner Foxworth, went out to the parking lot. Quesinberry's boyfriend was there shouting obscenities at the officers. Roth said, "This is bull——." He asked the officers, "Why don't [you] go down to Tenth Avenue and bust some crack cocaine dealers, why don't [you] do something real for once." He estimated four or five people were standing in the parking lot.

Officer Rosbrugh then asked Roth, "Why don't you come over here?" Roth held up his hands and stepped back. Officer Rosbrugh jumped over a small retaining wall and grabbed Roth's right hand. Roth jerked his hand away. Rosbrugh grabbed Roth's arm again and pulled it behind his back. Roth went down on his knees. Roth testified if he stresses his back and shoulder, they will twinge, but "I wouldn't call it a real injury."[6]

Petitioner Foxworth gave the following account of events. She consumed three wine coolers at the party. Foxworth saw Lewis approach the officers, and heard Quesinberry ask what was going on. Between thirty to thirty-five people were on the Dutch Deli's porch watching the incident. She then

---

5. A jury convicted Quesinberry of interfering with a police officer.

6. Roth was charged with disorderly conduct. He was acquitted.

walked out to the parking lot with Roth where she witnessed the officers arrest Lewis and Quesinberry. Foxworth asked the officers why Lewis and Quesinberry were being arrested. Quesinberry's boyfriend was cursing at the police. Officer Rosbrugh pointed at Roth and asked if he had something to say. Foxworth grabbed Roth's elbow and pulled him back. Officer Rosbrugh then grabbed Roth and pulled him to the ground.

She was watching Roth when someone suddenly grabbed her. She jerked her arm away but was grabbed again and placed in handcuffs by a third officer who had arrived on the scene. She had no idea why she was being arrested.[7]

Finally, petitioners presented the testimony of eyewitness Sandra Hucks. Hucks testified she did not recall either Lewis's or Quesinberry's arrests, but viewed portions of Roth's and Foxworth's arrests from the Dutch Deli's porch (some sixty to eighty feet from the incident). According to Hucks, there were approximately forty people at the party. A group of people were on the porch, and some people were yelling obscenities.

## ISSUE

Did the Court of Appeals err in affirming the trial judge's directing a verdict in respondents' favor on petitioners' excessive force claims?

## DISCUSSION

■ On review of a ruling granting a directed verdict, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the party against whom the verdict was directed. *Carson v. Adgar*, 326 S.C. 212, 486 S.E.2d 3 (1997). If the evidence is susceptible to more than one reasonable inference, the case should be submitted to the jury. *Gamble v. Int'l Paper Realty Corp.*, 323 S.C. 367, 474 S.E.2d 438 (1996).

Our decision is controlled by the Supreme Court's decision in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104

---

7. Foxworth was charged with interfering with a police officer. She was acquitted.

L.Ed.2d 443 (1989). *Graham* held all claims that law enforcement officers used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution.[8]

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is resisting arrest or attempting to evade arrest by flight.

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396–97, 109 S.Ct. at 1871–72, 104 L.Ed.2d at 455–56 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)) (other internal quotations omitted). Finally, the Court held the "reasonableness" inquiry in an excessive force case is an

---

**8.** "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."

objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. at 1872, 104 L.Ed.2d at 456.

■ Pursuant to *Graham,* we have balanced the nature and quality of the force used against petitioners with the officers' concerns at the time of the arrests. We find no evidence was presented by petitioners Quesinberry and Roth to suggest the force used by Officers Rouppasong and Rosbrugh was not objectively reasonable under the circumstances of this case. However, we find petitioner Lewis presented sufficient evidence of excessive force to survive a directed verdict motion.[9]

The arrests occurred at night. By the time Quesinberry and Roth were involved in the incident, a large crowd had gathered. People in the crowd were yelling and cursing at the officers. Both Quesinberry and Roth had been drinking. Quesinberry was questioning her mother's arrest, circling around the officers, and taunting them. Roth was cursing at the officers and challenging their arrest of Lewis and Quesinberry. When Officer Rosbrugh first touched Roth, he yanked his arm away. We find an objective officer would have viewed these circumstances as a threat to his own and others' safety. Furthermore, Roth's actions would give an objective officer the impression he was resisting arrest. We conclude no evidence was presented the force used was excessive regarding these petitioners.

■ Petitioner Lewis, however, was the first person involved with the officers. She obeyed Officer Rouppasong's command to return to the sidewalk after she initially approached the traffic stop. She was doing nothing more than standing on the sidewalk, across the highway from the officers, when she was grabbed. At the time of her arrest, there

---

9. As to petitioner Foxworth, the Court of Appeals summarily dismissed her claim because she did not file suit against the officer who arrested her. This finding was not contested in the petition for rehearing, petition for certiorari to this Court, or petitioners' brief. Therefore, this unappealed ruling of the Court of Appeals has now become the law of the case and is dispositive of Foxworth's appeal. *See* Rule 226(d), SCACR (only questions raised in petition for rehearing may be properly considered in petition for writ of certiorari to this Court).

were no other people around. Furthermore, once she was in the patrol car she repeatedly complained about her wrists and received no response whatsoever from Officer Rouppasong.

The crimes Lewis was charged with were not severe, and she did not pose an immediate safety threat to the officers or others. Furthermore, at the time these injuries were inflicted, particularly those caused by the handcuffs, she was not actively resisting arrest but was sitting in a patrol car, in police custody. The Ninth Circuit Court of Appeals had the opportunity to address an argument similar to Lewis's in *Palmer v. Sanderson,* 9 F.3d 1433 (1993). In that case, Palmer claimed Sanderson, a police officer, used excessive force in arresting him when Sanderson placed him in handcuffs tight enough to cause "pain and discoloration to his wrists, and that [the officer] refused his request to loosen them." In finding Sanderson was not entitled to qualified immunity,[10] that Court stated:

> Defendants are not entitled to qualified immunity under the "reasonableness standard" of the Fourth Amendment. Palmer claims that Sanderson fastened Palmer's handcuffs so tightly around his wrist that they caused Palmer pain and left bruises that lasted for several weeks. Sanderson has presented no evidence that would justify handcuffing Palmer so tightly that he suffered pain and bruises, or to justify his refusal to loosen the handcuffs after Palmer complained of the pain. Under these circumstances, no reasonable officer could believe that the abusive application of handcuffs was constitutional. Because Palmer's evidence, if credited, would establish that Sanderson's use of force was excessive in violation of the Fourth Amendment, the district court properly refused to grant summary judgment in defendants' favor on this claim.

*Id.* at 1436 (internal citation omitted).[11]  *See also Hansen v. Black,* 885 F.2d 642, 645 (9th Cir.1989) (finding officers used

---

**10.** "Law enforcement officials sued under § 1983 are entitled to qualified immunity if (1) the 'right' they allegedly violated was not "clearly established" at the time of the violation, or (2) if a reasonable officer would have thought that the defendants' actions were constitutional." *Palmer,* 9 F.3d at 1435.

**11.** We emphasize, however, that *Palmer* involved an issue and procedural posture somewhat different from that decided here today. Thus,

excessive force by "unreasonably injuring her wrist and arm as they handcuffed her"). Under these circumstances, we find the Court of Appeals erred in affirming the trial judge's ruling that the conduct as to petitioner Lewis was constitutional as a matter of law.

We affirm the Court of Appeals' ruling as to petitioners Quesinberry, Roth, and Foxworth. We reverse the Court of Appeals' ruling as to petitioner Lewis. This case is therefore remanded for further proceedings consistent with this opinion.[12]

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**

FINNEY, C.J., and TOAL, J., concur.

MOORE and BURNETT, JJ., concurring in part and dissenting in part in separate opinion.

BURNETT, Justice (concurring in part and dissenting in part):

I concur in part and dissent in part. I agree Petitioners Quesinberry and Roth did not present any evidence suggesting the force used against them by Respondents Officers Rouppasong and Rosbrugh was objectively unreasonable under the circumstances. I also agree Petitioner Foxworth's claim is not preserved for this Court's review. However, I disagree with the majority's conclusion in regard to Petitioner Lewis.

In considering an excessive force claim, the Court must judge

---

in citing it we do not suggest the force used against Lewis was, as a matter of law, unconstitutional. The determination of whether the actions taken exceeded the bounds of the Fourth Amendment will of course be made after evidence has been presented on both sides.

**12.** Respondent City of Myrtle Beach argues it was entitled to a directed verdict on the additional ground that petitioners presented no evidence any respondents were executing an unconstitutional municipal policy or custom. The trial judge did not rule on this issue. It is clear from reading the transcript that his sole basis for granting the directed verdicts was lack of evidence. Therefore, we decline to address the issue and leave it to the trial court upon remand should respondent choose to raise it.

[t]he 'reasonableness' of a particular use of force ... from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' (citation omitted) violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443, 455–56 (1989) (citing *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

Viewing the evidence in the light most favorable to Lewis, I conclude the trial judge properly directed the verdict on Lewis' excessive force claim. At the time of Lewis' arrest, it was nighttime. The police had stopped a vehicle; the driver was standing outside the vehicle, undergoing questioning by the police when Lewis approached the officers. Lewis exchanged words with the officers. She then stood near the highway, preparing to take photographs of the vehicle and of the stop.[1] As the officers walked towards Lewis, Quesinberry arrived. According to Quesinberry, the police were struggling with Lewis. Quesinberry taunted the police and, at Lewis' insistence, circled around the officers, snapping photographs. As a result of these events, a jury convicted Lewis of public intoxication and resisting arrest.

Lewis presented some evidence the handcuffs were applied tightly. Her own expert testified, however, carpal tunnel syndrome is not caused by a single event.

Assuming the officers used some force in effectuating Lewis' arrest, the force was objectively reasonable in light of the circumstances surrounding the arrest. It was nighttime; Lewis was intoxicated; she was resisting arrest; her daughter was taunting the police. Lewis presented no evidence the officers used excessive force in effectuating her arrest.

---

1. Lewis testified she hoped to take pictures of the driver performing sobriety tests.

In every arrest, some amount of force is used. However, the use of force does not automatically give rise to a jury issue as to whether the forced used was appropriate. In this instance, the trial judge properly determined the forced used was objectively reasonable. I would affirm the trial judge and the decision of the Court of Appeals.

MOORE, J., concurs.