537 S.E.2d 285

F & D ELECTRICAL CONTRACTORS, INC., Respondent,

v.

POWDER COATERS, INC. and BG Holding Co. f/k/a Colite Industries, Inc., Defendants,

of whom BG Holding Co. f/k/a Colite Industries, Inc. is, Appellant.

No. 3200.

Court of Appeals of South Carolina.

Heard March 8, 2000.

Filed June 19, 2000.

Refiled Aug. 28, 2000.

444

Theodore D. Willard, Jr., of Quinn, Patterson & Willard, of Columbia, for appellant.

E. Wade Mullins, III, of Bruner, Powell, Robbins, Wall & Mullins, of Columbia, for respondent.

## ORDER DENYING PETITION FOR REHEARING

PER CURIAM:

After careful consideration of the Petition for Rehearing, the Court is unable to discover any material fact or principle of law that has been either overlooked or disregarded and, hence, there is no basis for granting a rehearing. It is, therefore, ordered that the Petition for Rehearing be denied and the attached opinion substituted for the opinion filed on June 19, 2000.

H. SAMUEL STILWELL, J., would grant rehearing.

HEARN, Chief Judge:

In this action to foreclose a mechanic's lien, BG Holding Company (Owner) appeals the denial of its motion for a directed verdict and the trial court's award of attorney fees and costs to F & D Contractors, Inc. (F & D). We reverse.

## FACTS

Powder Coaters, Inc. (Renter) leased a portion of Owner's warehouse to operate a business that electrostatically coats metal parts with dry powder paint. In order to operate its business, Renter contracted with F & D to perform an electrical upfit on the leased portion of the warehouse. Although F & D performed the upfit, valued at $8,264.00, Renter never paid for the work.[1]

F & D then filed and sought to foreclose on a mechanic's lien against the warehouse. At a jury trial on the foreclosure action, Bruce Houston, Renter's president and owner, testified that before entering into the lease he discussed the warehouse's existing lighting conditions with Mark Taylor, Owner's leasing agent and property manager. Although Houston testified Renter would not have entered into the lease had it not been able to perform an electrical upfit to improve the warehouse's lighting, he also admitted that even Renter did not know the extent of the necessary modifications when the parties signed the lease.

---

1. Owner ultimately evicted Renter for nonpayment of rent.

Houston also testified he thought an addendum to the lease specifically authorized Renter to have the electrical upfit performed. However, Houston conceded Renter had no authorization to bind Owner to pay for the improvements.

At the conclusion of F & D's case, Owner moved for a directed verdict, arguing the evidence failed to establish the requisite element of consent under the mechanic's lien statute. *See* S.C.Code Ann. § 29–5–10(a) (1991). The trial court denied the motion. At the close of evidence, Owner renewed its motion for a directed verdict. The trial court again denied the motion and submitted the case to the jury. The jury returned a verdict for F & D in the amount of $8,264.00. The trial court awarded F & D costs and attorney fees in the amount of $8,264.00. Owner appeals.

## STANDARD OF REVIEW

When ruling on a motion for directed verdict, the court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Swinton Creek Nursery v. Edisto Farm Credit, ACA,* 334 S.C. 469, 476, 514 S.E.2d 126, 130 (1999). However, when the evidence yields only one inference, a directed verdict for the moving party is proper. *Id.*

An action to foreclose a mechanic's lien is an action at law. *Adams v. B & D, Inc.,* 297 S.C. 416, 420, 377 S.E.2d 315, 317 (1989). In an action at law tried by a jury, our jurisdiction is limited to correcting errors of law, and a jury's factual findings will not be disturbed on appeal unless a review of the record discloses that there is no evidence reasonably supporting those findings. *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 85, 221 S.E.2d 773, 775 (1976).

## DISCUSSION

On appeal, Owner contends F & D is not entitled to a mechanic's lien on the warehouse because F & D failed to establish Owner furnished the consent required by South Carolina Code Section 29–5–10(a) (1991). We agree.

## A.

■ Section 29-5-10 permits a laborer to obtain a lien upon a building when the laborer performs the work "by virtue of an agreement with, or by consent of, the owner of the building." S.C.Code Ann. § 29-5-10 (1991). There is no dispute that F & D and Owner never entered into an express agreement. Therefore, this appeal centers on the meaning of the term "consent" as used in section 29-5-10.

■ Neither party presented any South Carolina case construing section 29-5-10 in the landlord-tenant context, and our research revealed none. Nevertheless, the supreme court has consistently construed the consent required by section 29-5-10 as "something more than a mere acquiescence in a state of things already in existence. It implies an agreement to that which, but for the consent, could not exist, and which the party consenting has a right to forbid." *Geddes v. Bowden,* 19 S.C. 1, 7 (1883) (quoting *Gray v. Walker,* 16 S.C. 143, 147 (1881)); *see also Trico Surveying, Inc. v. Godley Auction Co.,* 314 S.C. 542, 545, 431 S.E.2d 565, 566 (1993); *C & B Co. v. Collins,* 269 S.C. 688, 690, 239 S.E.2d 725, 726 (1977); *Guignard Brick Works v. Gantt,* 251 S.C. 29, 32, 159 S.E.2d 850, 851 (1968); *Metz v. Critcher,* 86 S.C. 348, 350, 68 S.E. 627, 628 (1910).

In *Collins,* an owner executed a contract with a builder. 269 S.C. at 690, 239 S.E.2d at 725. The builder selected a supplier and allowed the owner to choose particular items from the supplier's stock. *Id.* In an affidavit, the owner stated her latitude of choice extended only to selecting particular items and not to selecting who supplied the items. *Id.* at 690, 239 S.E.2d at 726. The supreme court reversed an order granting the supplier summary judgment, noting the statements in the owner's affidavit, if established at trial, only constituted mere acquiescence and would be insufficient to satisfy the consent requirement of section 29-5-10. *Id.*

■ The *Collins* case illustrates that merely recognizing a builder will utilize sub-contractors or acknowledging the builder's selection of a sub-contractor is insufficient to establish the consent required under section 29-5-10. Therefore, under our reading of section 29-5-10 and the relevant supreme court precedent, to subject an owner's property to a lien in the

construction context, the sub-contractor seeking the lien must establish the owner did more than merely acknowledge, after the fact, who the builder selected as the sub-contractor. *See Metz,* 86 S.C. 348, 68 S.E. 627 (1910) (upholding a directed verdict and holding the owner merely acquiesced because the owner never had the opportunity to object or consent to the builder's selection of a supplier).

■ The same reasoning compels us to conclude that consent in the landlord-tenant context requires more than the lessor's mere recognition that the lessee will improve the leased property or acknowledgment of the lessee's selection of the laborer to perform the improvement. To subject the owner's property to a mechanic's lien when the owner merely acknowledges the *lessee's* selection of a contractor effectively subjects the owner's property to a lien for "acquiesc[ing] in a state of things already in existence," which the supreme court has repeatedly deemed insufficient to constitute the consent required under section 29–5–10. *See Collins, supra.*

This construction accords with the statutory language. Neither F & D nor Owner argues an "agreement" under section 29–5–10 can be between anyone other than the owner and the entity seeking the mechanic's lien. It is only logical then that consent under section 29–5–10 must also be between the owner and the entity seeking the lien, and this consent requires more than the owner's acknowledgment of a tenant's selection of the laborer who now seeks the mechanic's lien. To hold otherwise renders the owner of a rental property the guarantor for a tenant's obligations without conforming to the requirements generally needed for a valid guaranty. *See TranSouth Fin. Corp. v. Cochran,* 324 S.C. 290, 295, 478 S.E.2d 63, 65–6 (Ct.App.1996) (noting that a guarantor's liability is an independent contractual obligation where the debtor is not a party to the guaranty, the guarantor is not a party to the principal obligation, and the responsibilities imposed by the contract of guaranty differ from those created by the contract to which the guaranty is collateral (internal citation omitted)).

A jurisdiction with a similar mechanic's lien statute[2] has utilized the same analysis. *See Hall v. Peacock Fixture and*

2. The Connecticut mechanic's lien statute provides: "If any person has a claim for more than ten dollars for ... services rendered ... in the

*Electric Co.,* 193 Conn. 290, 475 A.2d 1100, 1102 (1984) (holding the "mere granting of permission for work to be conducted on one's property has never been deemed sufficient to support a mechanic's lien against the property"); *see also St. Catherine's Church Corp. of Riverside v. Technical Planning Assocs., Inc.,* 9 Conn.App. 682, 520 A.2d 1298, 1299 (1987) (finding the consent required under the mechanic's lien statute "must be a consent that indicates an agreement that the owner of at least the land shall be, or may be, liable for the materials or labor." (internal citation omitted)).

In the present case, viewing the evidence in the light most favorable to F & D, there is no evidence in the record that Owner consented to the contract between Renter and F & D as required by the mechanic's lien statute and South Carolina case law. First, F & D's complaint never expressly alleged Owner consented to F & D's contract with Renter. Second, F & D acknowledged that it was looking to Renter, not Owner, to pay the bill and that F & D never had any conversation with Owner prior to performing the work. Third, while Renter's president asserted that the lease and its addendum evidenced Owner's consent for Renter to perform the modifications, Renter also acknowledged that it was not authorized to bind Owner to pay for the modifications and presented no evidence that Owner did anything more than acknowledge Renter's selection of F & D to perform the upfit. Furthermore, the lease states that "[i]f the Lessee should make any [alterations, modifications, additions, or installations], the Lessee hereby agrees to indemnify, defend, and save harmless the Lessor from any liability which may devolve upon the Lessor as a consequence thereof."

Finally, although F & D contends the addendum to the lease between Owner and Renter evidenced Owner's consent to the electrical upfit, there is nothing in the addendum indicating Owner did anything other than acknowledge Rent-

---

improvement of any lot . . . and the claim is by virtue of an agreement with or by consent of the owner of the land... or of some person having authority form or rightfully acting for the owner . . . then the plot of land is subject to the payment of the claim." Conn. Gen.Stat. § 49–33(a) (1994), *amended by* 1999 Conn. Pub. Acts. No. 99–153 (Reg.Sess.) (this amendment added a new section to subject the leasehold interest to a mechanic's lien but did not alter section (a)).

er's selection of F & D as the contractor to perform the upfit or that Owner had the authority to forbid Renter from selecting a particular contractor. *See Collins,* 269 S.C. at 690, 239 S.E.2d 725. Acknowledging Renter's selection of a contractor amounts to, at most, "acquiesc[ing] in a state of things already in existence." *See Collins,* 269 S.C. at 690, 239 S.E.2d at 726; *see also Geddes,* 19 S.C. at 7; *Metz,* 86 S.C. at 350, 68 S.E. at 628. Therefore, F & D failed to present evidence Owner consented as required under section 29–5–10 and the court erred in denying Owner's motion for directed verdict.

## B.

F & D also asserts Owner's leasing agent witnessed the electrical work in progress and thereby consented, as Owner's agent, by failing to object to it after the fact. We disagree. The mere presence of Owner's agent at the construction site during construction at most amounts to acquiescence and is insufficient to constitute consent because mere acquiescence to an event which has already happened or begun cannot constitute consent. *See Collins,* 269 S.C. at 690, 239 S.E.2d at 726 (noting that consent means "something more than a mere acquiescence in a state of things already in existence."); *see also Muller v. Myrtle Beach Golf & Yacht Club,* 303 S.C. 137, 142–3, 399 S.E.2d 430, 433 (Ct.App.1990) (noting an agency relationship may not be established solely by the declarations and conduct of an alleged agent absent any indication of an agency relationship from the principal), *rev'd on other grounds,* 313 S.C. 412, 438 S.E.2d 248 (1993); *Hall,* 475 A.2d at 1102 (noting a lessee is not an agent for the owner merely by virtue of the landlord-tenant relationship).

## C.

Even if the consent required under section 29–5–10 is satisfied by Owner merely authorizing Renter to modify the warehouse, as argued by F & D, we still find the record insufficient to withstand Owner's motion for directed verdict.

F & D asserts an addendum to the lease between Owner and Renter evidenced Owner's consent to the upfit. The addendum states "Lessor shall allow Lessee to put Office Trailer in Building. All Utilities necessary to handle Lessee's

equipment shall be paid for by Lessee including, but not limited to electricity, water, sewer, gas." Contrary to F & D's argument, there is no reasonable construction of this language that establishes Owner agreed to allow Renter to electrically upfit the warehouse. The plain language of the addendum indicates Renter is required to pay for the utilities associated with the trailer, which accords with paragraph four of lessee's obligations under the lease. *See Cullum Mechanical Constr., Inc. v. South Carolina Baptist Hosp.*, 336 S.C. 423, 520 S.E.2d 809 (Ct.App.1999) (noting that when contractual language is clear and unambiguous, the language alone determines the contract's effect).

Furthermore, in light of the specificity of other addendum provisions, which, for example, provided for a partition and a rollup door, it strains credulity to suggest that this general provision, which merely required Renter to pay for electricity, water, sewer, and gas, authorized Renter to perform an electrical upfit. In fact, Renter's president admitted even he did not know the extent of the necessary modifications when entering the lease. Therefore, it is inconceivable that Owner both knew the extent of the modifications *and* consented to the electrical upfit.

Finally, the mere fact that Owner may be realizing some continued benefit from the modifications, although this is far from certain, is insufficient to entitle F & D to a mechanic's lien. *See Guignard Brick Works,* 251 S.C. at 32, 159 S.E.2d at 851–2 (holding the supplier could not obtain a mechanic's lien on owner's property even when owner used the materials provided by supplier with the knowledge that the builder had not paid supplier for the materials).

We therefore find the record in the instant case devoid of evidence of consent as required by section 29–5–10. Accordingly, we hold the trial court erred in denying Owner's motion for directed verdict. Because we reverse on this issue, F & D is not entitled to the award of attorney fees and costs.

For all the above reasons, the judgment below is

**REVERSED.**

MOREHEAD, Acting J., concurs.

STILWELL, J., dissents in a separate opinion.

STILWELL, Judge (dissenting):

I respectfully and reluctantly dissent. Attempting to apply the mechanic's lien statute in a landlord-tenant context presents vexing problems not normally encountered in the typical mechanic's lien case. The primary reason for this, in my view, is that while the mechanic's lien statute necessarily contemplates agreements between parties, or consents by a party, the entire scheme is more *in rem* than it is *in personam.* The primary focus of the action is against the property that has been improved. Even when no agreement or consent is found, courts have historically allowed the unpaid mechanic or materialman to tap an existing fund for payment. *See Metz v. Critcher,* 83 S.C. 396, 65 S.E. 394 (1909). In this case, and I suppose in all landlord-tenant cases, there is no fund available for either a general contractor or subcontractor to access for payment.

I think this case is a matter for the jury because of key language in the statute that gives the laborer a lien upon the building if his work is done *"by consent of* the owner ... or *a person having authority from* ... the owner."* S.C.Code Ann. § 29-5-10(a) (1991) (emphasis added). The phrase "consent of" must contemplate something different and less formal than "an agreement," otherwise the legislature would not have included it in the statute. The majority opinion reasons that the consent necessary to satisfy the statute must come directly from the owner to the entity seeking the lien, a position which overlooks the express language of the statute. It is respectfully submitted that if the consent was given directly by the owner, that would amount to an express agreement for the work to be performed.

There is abundant evidence in the record from which the jury could conclude that the landlord consented to the work being done. The renter testified that but for the upgrade in the electrical, they would not have rented the facility because of the inadequacy of the existing electrical components. Even if the lease does not specifically authorize the performance of the work, it at least contemplates that modifications would be

made, otherwise there would be no reason for the lease to contain an indemnification and hold harmless agreement. Clearly, the landlord had the authority to forbid any upfit, but did not do so. This is not a case where there was mere acquiescence in a state of things already in existence. It is a case where the consent was given prior to the work being done. The emphasis of the statute, in my judgment, is directed toward consenting to the work, not to the specific workman.

I do not believe the case of *C & B Co. v. Collins*,[1] which the majority relies upon for the proposition that to subject the owner's property to a lien the owner must play a role in actually selecting the specific laborer seeking the lien is particularly helpful here. The case was in an entirely different posture on appeal than the current case. In *Collins*, the trial court had granted summary judgment to the materialman. The supreme court, in reversing, found that the question of consent was a factual issue to be decided by the jury.

I believe that there was a jury issue involved in the instant case as well, and the jury has decided the issue. There was sufficient evidence to submit the question of consent to the jury, and for that reason I would affirm.

---

1.   269 S.C. 688, 239 S.E.2d 725 (1977).