567 S.E.2d 842

**F & D ELECTRICAL CONTRACTORS, INC., Petitioner,**

v.

**POWDER COATERS, INC. and BG Holding Co. f/k/a Colite Industries, Inc., Defendants,**

**Of Whom BG Holding Co. f/k/a Colite Industries, Inc., is Respondent.**

No. 25498.

Supreme Court of South Carolina.

Heard April 17, 2002.

Decided July 22, 2002.

E. Wade Mullins, III, of Bruner, Powell, Robbins, Wall & Mullins, of Columbia, for petitioner.

Theodore D. Willard, Jr., of Montgomery, Patterson, Potts & Willard, of Columbia, for respondent.

Chief Justice TOAL.

This Court granted certiorari to review the Court of Appeals' decision in *F & D Elec. Contractors, Inc. v. Powder Coaters, Inc.*, 342 S.C. 443, 537 S.E.2d 285 (Ct.App.2000). The Court of Appeals held the materialman was not entitled to a mechanic's lien since the owner of the property did not give proper consent, as is required by the Mechanic's Lien Statute, S.C.Code Ann. § 29-5-10 *et. seq.* (1991). We affirm, as modified.

### FACTUAL/ PROCEDURAL BACKGROUND

BG Holding f/k/a Colite Industries, Inc. ("BG Holding") is a one-third owner of about thirty acres of real estate in West Columbia, South Carolina. A warehouse facility is located on the property. In September 1996, Powder Coaters, Inc. ("Powder Coaters") agreed to lease a portion of the warehouse to operate its business. Powder Coaters was engaged in the business of electrostatically painting machinery parts and equipment and then placing them in an oven to cure. A signed lease was executed between Powder Coaters and BG Holding. Prior to signing the lease, Powder Coaters negotiated the terms with Mark Taylor, ("Taylor") who was the property manager for the warehouse facility and an agent of BG Holding.

The warehouse facility did not have a sufficient power supply to support Powder Coaters' machinery. Therefore, Powder Coaters contracted with F & D Electrical ("F & D") to perform electrical work which included installing two eight foot strip light fixtures and a two hundred amp load center. Powder Coaters never paid F & D for the services. Powder Coaters was also unable to pay rent to BG Holding and was evicted in February 1997. Powder Coaters is no longer a viable company.

In January 1997, F & D filed a Notice and Certificate of Mechanic's Lien and Affidavit of Mechanic's Lien. In February 1997, F & D filed this action against BG Holding foreclosing on its mechanic's lien pursuant to S.C.Code Ann. § 29-5-10 *et. seq.* (1991). F & D also asserted a cause of action against Powder Coaters for breach of contract and *quantum meruit*. BG Holding counterclaimed against F & D for slander of title. Powder Coaters did not answer, and a default judgment was entered against them.

A jury trial was held on September 2nd and 3rd, 1998. At the close of F & D's evidence, and at the close of all evidence, BG Holding made motions for directed verdicts, which were denied. The jury returned a verdict for F & D in the amount of $8,264.00. The court also awarded F & D attorneys' fees and cost in the amount of $8,264.00, for a total award of $16,528.00.

BG Holding appealed. The Court of Appeals, in a two to one decision, reversed the trial court, holding a directed verdict should have been granted to BG Holding on the grounds BG Holding did not consent to the electrical upgrade, as is required by the Mechanic's Lien Statute. This Court granted F & D's petition for certiorari, and the issue before this Court is:

Did the trial court err in denying BG Holding's motion for directed verdict because the record was devoid of any evidence of owner's consent to materialman's performance of work on its property as required by S.C.Code Ann. § 29-5-10? [1]

---

1. Both parties' briefs present three issues on appeal. However, they all concern whether or not the trial court correctly denied BG Holding's motions for directed verdicts which were based on their assertion that

## LAW/ ANALYSIS

F & D argues the majority of the Court of Appeals erred in holding the facts of the case failed to establish that BG Holding *consented* to the work performed by F & D, as is required the Mechanic's Lien Statute, S.C.Code Ann. § 29-5-10. We agree.

When ruling on a motion for directed verdict, this Court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Swinton Creek Nursery v. Edisto Farm Credit*, 334 S.C. 469, 514 S.E.2d 126 (1999). Where the evidence yields only one inference, a directed verdict for the moving party is proper. *Id.*

South Carolina's Mechanic's Lien Statute provides:

A person to whom a debt is due for labor performed or furnished or for materials furnished and actually used in the erection, alteration, or repair of a building . . . by virtue of an agreement with, or *by consent of, the owner of the building or structure, or a person having authority from, or rightfully acting for, the owner* in procuring or furnishing the labor or materials shall have a lien upon the building or structure and upon the interest of the owner of the building or structure . . . to secure the payment of the debt due.

S.C.Code Ann. § 29-5-10 (emphasis added). Both parties in this case concede there was no express "agreement" between F & D and BG Holding. Therefore, the issue in this appeal turns on the meaning of the word "consent" in the statute, as applied in the landlord-tenant context. This is a novel issue in South Carolina.

This Court must decide who must give the consent, who must receive consent, and what type of consent (general, specific, oral, written) must be given in order to satisfy the statute. Finally, the Court must decide whether the evidence in this case shows BG Holding gave the requisite consent.

---

F & D presented no evidence of consent, as is required by the mechanic's lien statute. Therefore, we have combined all three issues into one general issue.

## A. Who Must Receive the Consent.

The Court of Appeals' opinion in this case contemplates the consent must be between the materialman (lien claimant) and the landlord (owner). "It is only logical ... that consent under section 29–5–10 must ... be between the owner and the entity seeking the lien ..." *F & D Elec.*, 342 S.C. at 449, 537 S.E.2d at 288. As stated previously, applying the Mechanic's Lien Statute in the landlord-tenant context presents a novel issue. We find the consent required by the statute does not have to be between the landlord/owner and the materialman, as the Court of Appeals' opinion indicates. A determination that the required consent must come from the owner to the materialman means the materialman can only succeed if he can prove an agreement with the owner. Such an interpretation would render meaningless the language of the statute that provides: "... by virtue of an agreement with, *or by consent* of the owner ...." S.C.Code Ann. § 29–5–10 (emphasis added).

Therefore, it is sufficient for the landlord/owner or his agent to give consent to his tenant. The landlord/owner should be able to delegate to his tenant the responsibility for making the requested improvements. The landlord/owner may not want to have direct involvement with the materialman or subcontractors, but instead may wish to allow the tenant to handle any improvements or upgrades himself. In addition, the landlord/owner may be located far away and may own many properties, making it impractical for him to have direct involvement with the materialman. We find the landlord/owner or his agent is free to enter into a lease or agreement with a tenant which allows the tenant to direct the modifications to the property which have been *specifically consented* to by the landlord/owner or his agent.

▪ We hold a landlord/owner or his agent can give his consent to the lessee/tenant, as well as directly to the lien claimant, to make modifications to the leased premises.

## B. What kind of consent is necessary.

This Court has already clearly held the consent required by section 29–5–10 is "something more than a mere acquiescence in a state of things already in existence. It implies an

agreement to that which, but for the consent, could not exist, and which the party consenting has a right to forbid." *Geddes v. Bowden,* 19 S.C. 1, 7 (1883); *Trico Surveying, Inc. v. Godley Auction Co.,* 314 S.C. 542, 545, 431 S.E.2d 565, 566 (1993); *C & B Co. v. Collins,* 269 S.C. 688, 690, 239 S.E.2d 725, 726 (1977); *Guignard Brick Works v. Gantt,* 251 S.C. 29, 32, 159 S.E.2d 850, 851 (1968); *Metz v. Critcher,* 86 S.C. 348, 350, 68 S.E. 627, 628 (1910). However, our Mechanics Lien Statute has never been applied in the landlord-tenant context where a third party is involved.

Other jurisdictions have addressed this issue. The Court of Appeals cited *St. Catherine's Church Corp. of Riverside v. Technical Planning Assocs.,* 9 Conn.App. 682, 520 A.2d 1298 (Conn.Ct.App.1987) in support of its holding. We agree with the Court of Appeals that the Connecticut court's reasoning is persuasive, especially since Connecticut has a similar mechanics lien statute.

Conn. General Statutes § 49–33(a) provides in pertinent part:

> If any person has a claim for more than ten dollars for ... services rendered ... in the improvement of any lot or in the site development or subdivision of any plot of land, and the claim is by virtue of an agreement with or by consent of the owner ... or of some person having authority from or rightfully acting for the owner ... then the plot of land, is subject to the payment of the claims.

The Connecticut courts have stated "the consent required from the owner or one acting under the owner's authority is more than the mere granting of permission for work to be conducted on one's property; or the mere knowledge that work was being performed on one's land." *St. Catherine's Church,* 520 A.2d at 1300 (internal citations and quotations omitted). Furthermore, although the Connecticut courts have stated the statute does not require an express contract, the courts have required "consent that indicates an agreement that the owner of ... the land shall be, or may be, liable for the materials or labor." *Id.*

Although the other jurisdictions which have addressed this issue do not have mechanic's lien statutes as similar to South

Carolina's statute as Connecticut's, we find their reasoning persuasive.

Georgia and North Carolina courts have applied their mechanic's lien statutes in the landlord-tenant context in a way similar to Connecticut. The Georgia Court of Appeals has stated, "A contract for improvements between a lessee and a materialman does not subject the interest of the lessor to a lien unless a contractual relationship exists between the lessor and the materialman as well.... Mere knowledge by the lessor of the improvements does not give rise to the lien." *Nunley Contracting Co., Inc. v. Four Taylors, Inc.*, 192 Ga. App. 253, 384 S.E.2d 216, 217 (Ga.App.1989) (internal citations and quotations omitted). Although Georgia requires a "contractual relationship," an express agreement is not required. *Accurate Construction Co., Inc. v. Dobbs Houses, Inc.*, 154 Ga.App. 605, 269 S.E.2d 494, 495 (Ga.App.1980) (indicating the consent may be express or implied).

North Carolina has used similar language when discussing mechanic's liens in the landlord-tenant context. "Mere knowledge that work is being done or material furnished on one's property does not enable the person furnishing the labor or material to obtain a lien." *Brown v. Ward*, 221 N.C. 344, 20 S.E.2d 324, 326 (N.C.1942). The Court went on to state, "Unless the lessors were originally liable by reason of a contract of some sort, [they] cannot be made so because of their having resumed possession of the premises, with its improvements, upon surrender of their tenant." *Id.* (internal quotations and citations omitted). We find the following language from the North Carolina Court to be especially enlightening in the instant case,

> [Materialman] did the work under contract with [Lessee] with the understanding that it was to be charged to him. If they were unwilling to do the work and furnish the material upon his credit and intended to look to the security provided by statute, ordinary prudence required that they exercise that degree of diligence which would enable them to ascertain the status of the title to the land upon which the building was to be erected and to obtain the approval or

procurement of the owners. Their loss must be attributed to their failure to do so.

*Id.* at 326–327.

The reasoning of North Carolina, Connecticut, and Georgia is persuasive. F & D's brief appears to argue that mere knowledge by the landowner that the work needed to be done, coupled with the landlord's general "permission" to perform the work, is enough to establish consent under the statute. Under this interpretation, a landlord who knew a tenant needed to improve, upgrade, or add to the leased premises would be liable to any contractor and/or subcontractor who performed work on his land. Under F & D's interpretation the landlord would not be required to know the scope, cost, etc. of the 'work, but would only need to give the tenant general permission to perform upgrades or improvements.

 Clearly, if the landlord/owner or his agent gives consent directly to the materialman, a lien can be established. Consent can also be given to the tenant, but the consent needs to be specific. The landlord/owner or his agent must know the scope of the project (for instance, as the lease provided in the instant case, the landlord could approve written plans submitted by the tenant). The consent needs to be more than "mere knowledge" that the tenant will perform work on the property. There must be some kind of express or implied agreement that the landlord may be held liable for the work or material. The landlord/owner or his agent may delegate the project or work to his tenant, but there must be an express or implied agreement about the specific work to be done. A general provision in a lease which allows tenant to make repairs or improvements is not enough.

## C. Evidence of Consent in this Case

 In the instant case, there is some evidence of consent. However, it does not rise to the level required under the statute.

### Evidence There Was No Consent

1. The record is clear that no contract, express or implied, existed between BG Holding and F & G. BG Holding had no knowledge F & G would be performing the work.

2. F & G's supervisor, David Weatherington and Ray Dutton, the owner of F & D, both testified they never had a conversation with anyone from BG Holding. In fact, until Powder Coaters failed to pay under the contract, F & D did not know BG Holding was the owner of the building.

3. Mark Taylor, BG Holding's agent, testified he never authorized any work by F & D, nor did he see any work being performed by them on the site.

4. The lease specifically provided that all work on the property was to be approved in writing by BG Holding.

5. David Weatherington of F & D testified he was looking to Powder Coaters, not BG Holding, for payment.

6. Powder Coaters acknowledged it was not authorized to bind BG Holding to pay for the modifications.

7. The lease states, "[i]f the Lessee should make any [alterations, modification, additions, or installations], the Lessee hereby agrees to indemnify, defend, and save harmless the Lessor from any liability ..."

### Evidence BG Holding "Consented" to the Work.

1. Bruce Houston, owner of Powder Coaters testified that during the lease negotiations, he informed Mark Taylor, BG Holding's property manager and agent, that electrical and gas upgrading would be necessary for Powder Coaters to perform their work.

2. Houston testified Mark Taylor was present at the warehouse while F & D performed their work. [However, Taylor testified he did not see F & D performing any work on the premises].

3. Houston testified he would not have entered into the lease if he was not authorized to upgrade the electrical since the existing power source was insufficient to run the machinery needed for Powder Coaters to operate.

4. Houston testified Mark Taylor, BG Holding's agent, showed him the power source for the building so Taylor could understand the extent of the work that was going to be required.

5. Houston testified Paragraph 5 of the addendum to the lease was specifically negotiated. He testified the following language granted him the authority to perform the electrical upfit, so that he was not required to submit the plans to BG Holding as required by a provision in the lease: "Lessor shall allow Lessee to put Office Trailer in Building. *All Utilities necessary to handle Lessee's equipment shall be paid for by the Lessee including, but not limited to electricity, water, sewer, and gas.*" (emphasis added).[2]

6. Powder Coaters no longer occupies the property, and BG Holding possibly benefits from the work done.

Viewing the evidence in the light most favorable to F & D, whether BG Holding gave their consent is a close question. However, we agree with the Court of Appeals, that F & D has not presented enough evidence to show: (1) BG Holding gave anything more than general consent to make improvements (as the lease could be interpreted to allow); or (2) BG Holding had anything more that "mere knowledge" that the work was to be done. Powder Coaters asserted the lease's addendum evidenced BG Holding's consent to perform the modifications; however, there is no evidence BG Holding expressly or implicitly agreed that it might be liable for the work. In fact, the lease between Powder Coaters and BG Holding expressly provided Powder Coaters was responsible for any alterations made to the property. Even Powder Coaters acknowledged it was not authorized to bind BG Holding. In addition, the addendum provisions are specific with respect to the partition and a rollup door. Therefore, it is impossible to see how the very general provision requiring Powder Coaters to pay for water, sewer, and gas can be interpreted to authorize Powder Coaters to perform an electrical upgrade. Furthermore, we agree with the Court of Appeals that the mere presence of BG Holding's agent at the work site is not enough to establish consent.

## CONCLUSION

We hold consent, as required by the Mechanic's Lien Statute, is something more than mere knowledge work will be or

---

**2.** We note that BG Holding denies this interpretation, but insists it just requires the Lessee to pay for all utility bills.

could be done on the property. The landlord/owner must do more than grant the tenant general permission to make repairs or improvements to the leased premises. The landlord/owner or his agent must give either his tenant or the materialman express or implied consent acknowledging he may be held liable for the work.

The Court of Appeals' opinion is **AFFIRM AS MODIFIED.**

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.