611 S.E.2d 488

**Jack HURD, Respondent,**

v.

**WILLIAMSBURG COUNTY and Williamsburg County Transit Authority, Petitioners.**

No. 25959.

Supreme Court of South Carolina.

Heard Jan. 4, 2005.

Decided March 28, 2005.

422

Charles E. Carpenter, Jr. and S. Elizabeth Brosnan, of Richardson, Plowden, Carpenter & Robinson, P.A., of Columbia, and Stephen Paul Bucher, of Bucher Firm, P.C., of North Charleston, for Petitioners.

Ladson Fishburne Howell, Jr., of Howell and Christmas, L.L.C., and Richard G. Wern, of The Wern Law Firm, P.A., both of North Charleston, and Ronnie Alan Sabb, of Law Offices of Ronnie A. Sabb, of Kingstree, for Respondent.

Justice BURNETT.

We granted a writ of certiorari to review the Court of Appeals' decision in *Hurd v. Williamsburg County,* 353 S.C. 596, 579 S.E.2d 136 (Ct.App.2003). We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On February 1, 1996, Respondent (Hurd) was struck by an automobile after he exited a bus owned and operated by Petitioners Williamsburg County and the Williamsburg County Transit Authority (collectively referred to as the "Transit Authority").

At approximately 6:00 AM on February 1, 1996, Hurd boarded the bus in route to Myrtle Beach. The bus' interim destination was a transfer station, known as a "Park and Ride," where passengers could purchase tokens, board buses, and transfer to other locations. Before arriving at the Park and Ride, the bus stopped on the shoulder of the road across a two-lane highway from Mingo's store, a gas station and restaurant. Hurd testified he was "half awake and half asleep" when the bus stopped. The stopping of the bus roused Hurd, whereupon he asked the bus driver where the disembarking passengers were going. The driver informed Hurd the passengers were going for breakfast at Mingo's. Hurd stated he exited and walked to the rear of the bus, to join the other passengers, without any instructions from the driver.

Hurd testified the bus began to pull off the shoulder and into the highway as Hurd approached the highway. The bus was moving when Hurd stepped into the highway. Because Hurd was standing at the rear of the bus where the engine is located, he was not able to hear the oncoming car. Hurd testified he was unable to see the car because of the angle of the moving bus and stepped into the highway. The driver of the car stated he never saw Hurd prior to impact.

Respondent filed suit against Petitioners and the jury returned a verdict finding Hurd 42 percent at fault and the Transit Authority 58 percent at fault. The jury awarded Hurd $675,000 in damages. The trial court reduced the award of damages to $250,000 pursuant to the South Carolina Tort Claims Act (SCTCA). The Court of Appeals affirmed the jury's verdict finding the trial court did not err in denying Transit Authority a directed verdict. Transit Authority appeals.

## ISSUES

I. Did the Court of Appeals change the common law standard of negligence in determining the trial judge properly submitted the case to the jury?

II. Did the Court of Appeals err in concluding Hurd presented evidence allowing the inference that the Transit Authority's actions were the proximate cause of the accident?

III. Did the Court of Appeals err in concluding Hurd presented evidence Transit Authority's negligence exceeded Hurd's negligence?

## LAW/ANALYSIS

When reviewing a ruling on a motion for directed verdict, we must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *F & D Elec. Contractors, Inc. v. Powder Coaters, Inc.*, 350 S.C. 454, 567 S.E.2d 842 (2002). If the evidence as a whole is susceptible of more than one reasonable inference, the trial judge must submit the case to the jury. *Quesinberry v. Rouppasong*, 331 S.C. 589, 503 S.E.2d 717 (1998). We will reverse the trial court if there is no evidence to support the trial court's decision to submit the case to the jury. *Steinke v. South Carolina Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 520 S.E.2d 142 (1999).

## I.

Transit Authority argues the Court of Appeals erred in changing the common law standard of negligence from reasonable care to "best choice care" in concluding Transit Authority was not entitled to a directed verdict. Specifically, Transit Authority contends Hurd was let off in a position of reasonable safety and Hurd failed to present evidence establishing Transit Authority breached any duty of safety owed to Hurd. We disagree.

During the trial, Robert Roberts, an expert in the area of traffic engineering and traffic and pedestrian safety, testified it was unreasonable for the bus driver to discharge the passengers on the shoulder of Highway 41. Roberts also testified that the Park and Ride was a safety device, among other things. Booker T. Pressley, a former director of the Transit Authority, testified that chief among the concerns that led to the County's construction of the Park and Ride was high traffic congestion. Pressley stated Transit Authority's policy is to only let passengers off at the Park and Ride on Highway 41 because of the congestion. *See Caldwell v. K–Mart Corp.*, 306 S.C. 27, 31–32, 410 S.E.2d 21, 24 (Ct.App. 1991) (when defendant adopts internal policies or self-imposed

rules and thereafter violates those policies or rules, jury may consider such violations as evidence of negligence if they proximately caused a plaintiff's damages). Because more than one inference could be drawn from this evidence, we conclude the Court of Appeals correctly found the trial judge did not err in denying Transit Authority's motion for directed verdict.[1]

■ The Court of Appeals did not heighten the standard of care in concluding Hurd presented evidence supporting his allegation that he was not discharged in a reasonably safe place. Instead, the Court of Appeals relied on this Court's decision in *Flynn v. Carolina Scenic Stages,* 237 S.C. 340, 117 S.E.2d 364 (1960). In *Flynn,* this Court acknowledged that the relation of passenger and a common carrier ordinarily ends when the passenger steps from a bus into a reasonably safe place on a public highway. However, a carrier is not then wholly discharged of any duty whatsoever to such passenger. It still owes the duty of exercising ordinary care to see that after alighting safely the passenger is not in a position or situation as to be imperiled by the starting up of the bus. *Flynn,* 237 S.C. at 345, 117 S.E.2d 364 at 367. We conclude the trial judge properly submitted the case to the jury because Hurd presented evidence based on the facts of this case that the shoulder of the highway was not a reasonably safe place to allow Hurd to exit the bus.

## II.

■ Transit Authority argues the Court of Appeals erred in concluding Hurd presented evidence that Transit Authority's actions were the proximate cause of Hurd's injuries. Transit Authority contends the side of the road where the bus discharged passengers departing for Mingo's was a place of reasonable safety as a matter of law. We disagree.

■ In a negligence action the plaintiff must prove proximate cause. *Rush v. Blanchard,* 310 S.C. 375, 426 S.E.2d 802 (1993). "Ordinarily, the question of proximate

---

1. The logic of the dissent is inescapable, however, our duty is guided by a standard requiring submission to the fact-finder of contested issues of fact. Whether the shoulder of the road was a reasonably safe place for the discharge of passengers was a contested issue the jury resolved against Transit Authority.

cause is one of fact for the jury and the trial judge's sole function regarding the issue is to inquire whether particular conclusions are the only reasonable inferences that can be drawn from the evidence." *McNair v. Rainsford,* 330 S.C. 332, 349, 499 S.E.2d 488, 497 (Ct.App.1998). Proximate cause requires proof of both causation in fact and legal cause. *Oliver v. South Carolina Dep't of Hwys. & Pub. Transp.,* 309 S.C. 313, 422 S.E.2d 128 (1992). Causation in fact is proved by establishing the plaintiff's injury would not have occurred "but for" the defendant's negligence. *Oliver,* 309 S.C. at 316, 422 S.E.2d at 130. Legal cause is proved by establishing foreseeability. *Id.* An injury is foreseeable if it is the natural and probable consequence of a breach of duty. *Trivelas v. South Carolina Dep't of Transp.,* 348 S.C. 125, 558 S.E.2d 271 (Ct.App.2001).

We conclude Hurd presented evidence of both factual and legal causation. Hurd presented evidence that "but for" the bus pulling out concurrently with Hurd attempting to cross the road, Hurd would not have been struck by the oncoming car. Hurd also presented evidence that the vehicle-pedestrian accident was foreseeable. Pressley's testimony is evidence suggesting (1) the Transit Authority knew that the location of the accident was dangerous to pedestrians; (2) the County constructed the Park and Ride to minimize known dangers at this intersection; (3) the Transit Authority implemented a policy that all drivers were to use the Park and Ride rather than the shoulder of the Highway; (4) the Transit Authority violated its own safety policy by discharging Hurd and the other passengers on the side of the highway; (5) Transit Authority issued the bus driver a warning for violating the safety policy on the date of the accident; and (6) the starting of the bus prevented Hurd from hearing or seeing traffic on the highway.

Based on the foregoing evidence, the Court of Appeals was correct in affirming the trial judge's decision to allow the question of proximate cause to go to the jury. Hurd does not contend the Transit Authority's negligence was the sole cause of his injuries. Nevertheless, Hurd presented evidence at trial that the Transit Authority's negligence contributed to the accident. Therefore, the case was properly submitted to the jury.

## III.

 Transit Authority argues the Court of Appeals erred in concluding Hurd presented evidence that Transit Authority's negligence exceeded Hurd's own negligence. We disagree.

 A plaintiff may only recover damages if his own negligence is not greater than that of the defendant. *Bloom v. Ravoira*, 339 S.C. 417, 529 S.E.2d 710 (2000). The determination of respective degrees of negligence attributable to the plaintiff and the defendant presents a question of fact for the jury, at least where conflicting inferences may be drawn. *Creech v. South Carolina Wildlife and Marine Res. Dep't*, 328 S.C. 24, 491 S.E.2d 571 (1997). In a comparative negligence case, the trial court should grant a motion for directed verdict if the sole reasonable inference from the evidence is that the non-moving party's negligence exceeded fifty percent. *Bloom*, 339 S.C. at 422, 529 S.E.2d at 713.

We conclude the Court of Appeals correctly determined Hurd presented evidence allowing the jury to draw a reasonable inference that Transit Authority's negligence exceeded fifty percent. A directed verdict for Transit Authority would have been inappropriate because Hurd presented evidence that Transit Authority violated its own safety policy by discharging passengers on the shoulder of the road. This evidence is reinforced by Transit Authority's own admission that the driver of the bus was given a warning in connection with the incident.

## CONCLUSION

Because there is evidence that would allow a jury to conclude Transit Authority was negligent in discharging Hurd on the shoulder of the road, we affirm the Court of Appeals' decision.

MOORE and WALLER, JJ., concur.

TOAL, C.J., and PLEICONES, J., dissenting in separate opinions.

Chief Justice TOAL.

I respectfully dissent. In my opinion, the Transit Authority exercised reasonable care in dropping off its passenger. Therefore, I would reverse the court of appeals' decision holding that the Transit Authority breached its duty of care to Hurd.

I disagree with the majority because, in my opinion, the majority holds the Transit Authority to a higher duty of care than what is required of common carriers. A common carrier is required to allow a passenger to exit the bus in a reasonably safe place. *Flynn v. Carolina Scenic Stages,* 237 S.C. 340, 345, 117 S.E.2d 364, 366–367 (1960). Further, the relationship between passenger and carrier ordinarily ends when the passenger steps from a bus into a reasonably safe place on a public highway. *Id.* Other courts have been reluctant to hold common carriers liable for injuries suffered after the passenger safely exits. *See e.g. Burton v. Des Moines Metro. Transit Auth.,* 530 N.W.2d 696, 699 (Iowa 1995) (holding that the duty of a common carrier ends when the passenger safely exits and carriers are not liable for injuries caused by the passengers decision to step into traffic). In *Burton,* the Iowa Supreme Court explained the rationale for holding that a carrier's duty ends once a passenger exits the bus:

[A]fter alighting, *the passenger's individual choice directs where he or she will walk, the passenger is in a better position to guard against the dangers of moving vehicles* and common sense, logic, and public policy simply do not support extending a duty of care of the public carrier to insure that once the passenger has safely departed, the streets will be free from defect.

*Id.* citing *Connolly v. Rogers,* 195 A.D.2d 649, 599 N.Y.S.2d 731, 732 (N.Y.App.Div.1993) (quoting *Blye v. Manhattan and Bronx Surface Transit Operating Authority,* 124 A.D.2d 106, 511 N.Y.S.2d 612, 615, *aff'd,* 72 N.Y.2d 888, 532 N.Y.S.2d 752, 528 N.E.2d 1225 (1988)) (emphasis added).

In the present case, the Transit Authority dropped Hurd off on the shoulder of the road, out of harm's way. The gravel shoulder was a defined turn out at least 200 feet long and at least twice as wide as the bus. Hurd then chose to cross the street, taking himself out of a safe place and inserting himself

into a dangerous place, that is, the middle of the road. Hurd claims that the Transit Authority bus blocked vision when it pulled off, but the fact is, Hurd was in a safe place until he decided to cross the street before he could see clearly.[2] In essence, he walked right out in front of a car with its lights on. In my opinion, the Transit Authority fulfilled the duty owed to Hurd by allowing Hurd to exit in a reasonably safe place—the shoulder of the highway. Because I believe the majority's holding heightens the duty of care owed by common carriers to a level beyond reasonable care, I would reverse the court of appeals' decision and hold that the Transit Authority was entitled to a directed verdict.

Justice PLEICONES.

I agree with the dissent that the Transit Authority was entitled to a directed verdict, as there was no evidence that the shoulder of the road was an unreasonable place to let Hurd exit the bus.

---

**2.** It is undisputed that the shoulder of the road was a reasonably safe place. In fact, on cross-examination of Hurd's expert, the following exchange took place:

Q. [W]hen the bus driver discharged Mr. Hurd along the roadside in the shoulder that at the moment that he got out of the bus and was there along the shoulder he was in a place where it was safe for him to be . . .

A. As long as he stood there. Yes. Reasonably safe, sir.

Instead the issue on appeal has been framed to determine whether the existence of a "safer" drop off area, such as a Park and Ride, makes the place the passenger actually exited unsafe. This is simply not the appropriate standard that common carriers are charged to uphold. The majority heightens the duty a common carrier owes to its passengers to a "best choice" standard, which is inconsistent with the current standard of care for common carriers. I fear that heightening the standard of care for a common carrier could create a nightmare scenario for rural area transit authorities. For example, under the rationale of the majority, a carrier could be found negligent for dropping off a passenger in a *reasonably safe place* because the carrier did not choose the best place to drop off the passenger, which might be two blocks down the street.