15626

THOMAS v. ATLANTIC GREYHOUND CORPORATION

(29 S. E. (2d), 196)

April, 1943.

*Mr. N. A. Turner,* of Columbia, S. C., and *Mr. G. Badger Baker,* of Florence, S. C., Counsel for Appellant,

*Messrs. McEachin & Townsend,* of Florence, S. C., Counsel for Respondent,

February 19, 1944.

MR. ASSOCIATE JUSTICE FISHBURNE delivered the unanimous Opinion of the Court:

The plaintiff brought suit against the defendant bus company to recover damages for personal injuries alleged to have been sustained in one of its buses on which he was being transported as a passenger on August 18, 1942, from Florence to Coward, South Carolina. He alleged that his injuries were received because the bus was overcrowded, improperly ventilated, and was parked for an unreasonable length of time in the hot afternoon sun, as the result of which he became unconscious from heat exhaustion.

The defendant denied the material allegations of the complaint, and further defended upon the ground that the traffic on the day in question was particularly heavy, but that it placed at the disposal of the public all of its available equipment; that its facilities were taxed to the extreme in rendering passenger service due to the wartime emergency; and that the plaintiff's condition was due to and caused by some condition entirely disconnected with any acts of appellant,—or was caused by the act of God.

The bus company, a common carrier for hire, is appealing from an adverse judgment for actual damages awarded the plaintiff.

We first consider whether the lower court erred in overruling appellant's motion for a directed verdict based upon the ground that the evidence showed no actionable negligence on its part.

The bus was en route from Raleigh, North Carolina, to Charleston, South Carolina, and was boarded by the plaintiff, a colored man, at Florence, an intermediate point, at about two o'clock in the afternoon. It was one of two sections, both of which were crowded with passengers when Florence was reached. When the plaintiff entered the bus every seat was occupied, and passengers were standing in the aisle. He pushed his way to the back of the bus, reserved for colored people, and stood at the rear of the line. When the bus left Florence, forty-one passengers were seated and eighteen were standing. The plaintiff was not advised by the driver of the bus that a seat would not be furnished him, and did not realize this fact until he had reached his place in the back; but he testified: "I have been riding in there before, and when they find the bus was crowded they always made preparation for it, and we got off the bus, and on another. They didn't make any preparation for us."

The bus driver testified that before leaving the terminal station he attempted to relieve the congested condition by obtaining the use of an additional bus from the Pee Dee Coach Company in Florence; that it was the custom of the defendant to hire a coach from this company to take care of overloads when a coach was available. It appears that the driver received information that the Pee Dee Coach Company had no bus immediately available, but one was under repair at Senseney's garage, which was along the route to Charleston and nearly a mile from the station at Florence. When the bus on which the plaintiff was a passenger reached this point it was stopped and parked in the hot sun in front of Senseney's garage; the driver alighted, with the purpose in view of obtaining the Coach Company's bus which he saw at the rear of the garage; but it was driven away before he

could hail the driver. He then undertook to telephone the terminal station at Florence, where he had talked with Mr. Anderson, the General Manager of the Pee Dee Coach Company, but could obtain no telephonic communication with him or with anyone at the station. He said that the telephone continued to give the "busy" signal. The driver, according to his statement, was at Senseney's garage ten or fifteen minutes, when, upon looking out of the window, he saw the plaintiff being brought out of the bus in an unconscious condition, and suffering from heat prostration. With his First Aid kit, he rushed over to the sidewalk where the plaintiff had been laid, but could not resuscitate him. Physicians were thereupon called, and the plaintiff was carried to a hospital where he remained three or four days.

Before leaving his bus to enter Senseney's garage, the bus driver did not publicly announce to the passengers why the bus had been stopped, nor his purpose in leaving the bus, nor how long he would be away. One or two passengers standing closely around him in the forward part of the bus, heard him conversationally state his purpose, but the plaintiff remained in ignorance. The stationary bus, on this hot August afternoon, became hotter and hotter. The plaintiff, crowded in the back, found the heat more and more oppressive, and after about twenty minutes had elapsed, according to his estimate, he realized that he was becoming ill, made an effort to get by the passengers standing in front of him, but fainted before he could make any headway. After the plaintiff had been taken to the hospital, the bus driver proceeded on his route to Charleston without obtaining any additional bus to relieve the overcrowded condition.

It appears from the evidence, or the reasonable inference may be drawn, that the bus driver was told before he left the terminal station at Florence that the bus of the Coach Company was being repaired at Senseney's garage, and was out on a road trial or test, and might or might not be there when he reached that point. But it is evident that the de-

fendant communicated no instructions by telephone from the terminal station to Senseney's garage that this additional coach should be held there pending the arrival of the defendant's crowded bus. If such instructions had been given, it may be inferred that this additional coach, instead of being driver away from the garage, would have been held over, and could have been used to relieve the congestion on defendant's bus; and in such event the delay in the hot sun would have been obviated.

The appellant admits that at the time the plaintiff fainted he was standing inside the bus; but it contends that at this very time it was exhausting all reasonable efforts to provide him with a seat, by obtaining another bus. And of course it goes without saying, that the appellant was not in any way responsible for the Summer heat which prevailed. But in our opinion, there was sufficient evidence of negligence for the case to be submitted to the jury.

A common carrier owes a duty to its passengers to exercise the highest degree of care for their safety that is consistent with the practical operation and conduct of its business so long as the relationship of passenger and carrier exists; and a failure to do so is negligence. *Humphries v. Stokes Bus Line,* 199 S. C., 132, 18 S. E. (2d), 675; *Eaddy v. Greensboro-Fayetteville Bus Lines,* 191 S. C., 538, 5 S. E. (2d), 281; *Payne v. Atlantic Greyhound Bus Lines,* 182 S. C., 58, 188 S. E., 426.

Where a motion is made for a directed verdict, the testimony and all reasonable inferences deducible therefrom are to be considered in a light most favorable to the party against whom the motion is made. It is not the province of the Court to weigh the testimony, but simply to determine if there is any relevant, competent testimony adduced from which a reasonable inference may be drawn, tending to establish the material elements in the plaintiff's cause of action.

Negligence is the want of due care; and due care means commensurate care under all the circumstances. The lack of diligence or want of due care may consist in doing the wrong thing at the time and place in question, or it may arise from inaction when something should have been done. The rule is constant, while the degree of care which a reasonably prudent man exercises, varies with the exigencies of the occasion.

In our opinion, it was for the jury to say in this case whether the defendant exercised toward the plaintiff that high degree of care which the law requires. While the facts are close, and the issue might have been determined by the jury either way, it is not one of those cases in which the evidence is susceptible of only one reasonable inference.

It is stated in *Greenville & C. R. Co. v. Partlow,* 14 Rich., 237: "It may be that no one of the facts would, of itself, warrant the inference, and yet, when taken together, they may produce belief, which is the object of all evidence."

And that is to a large extent true in this case. While no particular fact or circumstance proved may establish negligence or warrant the inference of negligence, yet when all of the facts and circumstances are considered as a whole, a reasonable inference of negligence may be drawn.

The defendant knew of the hot weather which prevailed, and knew or should have known that heat was accumulating in its bus, crowded with passengers, while it stood parked in front of Senseney's garage. The appellant contends that the reasonableness of the parking time is dependent upon the activity of its driver at the garage in trying to secure the extra bus. Whether or not twenty minutes engaged in this futile effort without affording the passengers the opportunity to get off the bus, and whether the defendant's failure to have the bus of the Pee Dee Coach Company held at the garage, constituted negligence were properly questions for the jury.

Error is assigned because of the following instruction to the jury:

"Now in regard to the duty, the particular duty of the carrier, the bus company in this case, to furnish a seat for its passengers, I charge you this: 'A carrier is liable for breach of a passenger's transportation contract in failing to provide a seat except in abnormal or extreme conditions of travel in which the carrier has used all means at hand to provide accommodations and has notified the passenger of its inability to do so.' So I charge you further, in this case, it was the duty of the defendant to furnish a seat to the plaintiff when the plaintiff became a passenger upon the defendant's bus, unless by reason of abnormal or extreme conditions the defendant, after making every reasonable effort to do so was unable to do so and notified the plaintiff to that effect."

The foregoing charge was authorized by the holding of this Court in the case of *Cave v. Seaboard Air Line Ry.*, 94 S. C., 282, 77 S. E., 1017, L. R. A., 1915-B, 915, Ann. Cas., 1915-A, 1065. But the appellant argues that the carrier does not have to notify the passenger of its inability to furnish him a seat if the passenger had independent knowledge of that fact;—and in no event until the carrier knew that a seat could not be provided. The charge as given was responsive to the issues made by the evidence.

From the quotation we have hereinabove given from the plaintiff's testimony, it can reasonably be inferred that the plaintiff from his previous experience in riding upon the buses of the appellant, anticipated that a seat would be provided within a reasonable time, as had theretofore been done. It cannot be said as a matter of law that the plaintiff knew that he would be given no accommodations other than that of a standee. Moreover, the inference may be drawn that the appellant knew when the plaintiff boarded the bus at the station in Florence that not only were all of its avail-

able seats occupied, but that with the plaintiff, eighteen passengers would be standing in the aisle. Certainly the evidence does not disclose that any announcement was made to the passengers that additional accommodations could not be provided. The securing of the additional bus was problematical and dependent upon contingencies which did not materialize, and were hardly expected to materialize.

Finally, it is said that the lower court erred in charging Rule 73 (Sec. 8516, 1942 Code) promulgated by the Public Service Commission of South Carolina, which reads in part as follows:

"No motor bus used in the transportation of passengers in South Carolina shall be allowed to leave a terminal with passengers standing therein, whose destination is more than ten miles distant, nor shall any such motor bus be allowed to leave an intermediate station with passengers standing, whose destination is more than ten miles distant where other motor vehicles may be employed to carry such overload."

It is argued that the plain and intended meaning of the foregoing rule is that it shall apply when the bus leaves the terminal or intermediate station in the actual course of its journey; that it is not presumed to be effective in a short ride as was the case here, from one point to another in the furtherance of the obligation to obtain another vehicle, if reasonably necessary. It is contended that under the evidence, the immediate destination of the bus after leaving the Florence station, was Senseney's garage, where it was expected an additional bus could be obtained, and that until this errand was completed the bus could not be said to have commenced its regular run.

The bus driver testified that he was ready to leave for Charleston when his bus was loaded at the Florence station. Senseney's garage was located on the road to Charleston leading out of the city of Florence. The bus made no detour or deviation from its regular route in passing the ga-

rage. It may reasonably be inferred from the driver's testimony that he only stopped at Senseney's garage because while slowly driving by and looking through the front door of the garage to the back, he saw parked at the rear of the garage the Pee Dee Coach Company's bus. He said he was rolling along very slowly within the city limits, and "I saw the bus parked through the garage, parked either in the back door or near it, so I pulled over and stopped, and when I got out of the bus and started into the garage and got where I could see it, the bus was driving off."

We think it may reasonably be inferred that the driver only stopped at the garage as he was passing by, because he happened to see this other bus parked at the rear of the garage, and not because Senseney's garage was his special destination, and that he was pursuing this route only to reach that point. It may also be inferred that if he had not caught sight of the bus in the rear of Senseney's garage, he would not have stopped at all. It will be recalled that there is nothing in the evidence to show that Senseney's garage had been notified or instructed to hold the extra bus so that it could be used by the defendant. It was for the jury to say under the charge, whether the bus had left the Florence terminal with the intention of proceeding on to Charleston uninterruptedly.

Judgment affirmed.

MR. ASSOCIATE JUSTICE STUKES and CIRCUIT JUDGES WM. H. GRIMBALL and PHILIP H. STOLL, ACTING ASSOCIATE JUSTICES, concur.

MR. CHIEF JUSTICE BAKER did not participate.