17717

Lillian H. FLYNN, Administratrix of the Estate of Mary Effie Hoffman, Deceased, Appellant, v. CAROLINA SCENIC STAGES and Cecil Adell Dixon, Respondents

(117 S. E. (2d) 364)

*Strickland & Hardin* and *Gaston & Gaston,* of Chester, for *Appellant,*

*Messrs. Cooper & Gary,* of Columbia, and *Hemphill & Hemphill,* of Chester, *for Respondents,*

December 1, 1960.

OXNER, Justice.

This is an action to recover damages for the alleged wrongful death of Mrs. Mary Effie Hoffman, who was run over by a bus of the Carolina Scenic Stages in which she had been a passenger and from which she had alighted just prior to being struck by the front of the bus. The bus was driven by Cecil Adell Dixon who was joined as a party defendant along with the bus company. At the conclusion of the plaintiff's testimony, the Court granted a motion by defendants for a nonsuit upon the grounds (1) that there was no proof of negligence on the part of defendants, and (2) that plaintiff's intestate was guilty of contributory negligence as a matter of law. From this order of nonsuit, the plaintiff has appealed. The testimony discloses the following facts:

Decedent, a widow 81 years of age, resided with a daughter in Columbia. She enjoyed good health but her hearing was impaired. She had a son living at or near Edgemoor, a small village in Chester County, whom she visited quite frequently. On May 16, 1958, she left Columbia on bus of the Carolina Scenic Stages to visit her son. The bus, traveling in a northerly direction, arrived at Edgemoor about 4:30 in the afternoon. It stopped at a point on the highway diagonally across the road from her son's home with the right wheels on the dirt shoulder and the left wheels on the asphalt surface of the road. The weather was stormy, the wind was

blowing and it had started to rain. To reach her son's home it was necessary for decedent to cross the highway. There was no cross-walk at this place. The family was expecting her. Her daughter-in-law, a great-grandson about 13 years of age, and a maid were on the front porch.

When the bus stopped, the driver left the engine running, opened the door and took decedent's suitcase and set it down on the dirt shoulder of the road near the front of the bus. He then assisted her in getting off. Just prior to this, decedent's daughter-in-law had told the 13 year old boy to go and get his great-grandmother's suitcase. He arrived just about the time decedent had got off the bus. According to his testimony, the driver told her "to go back of the bus and look up and down the road before you cross." Decedent, who was then standing near the front of the bus, said or did nothing to indicate that she heard this admonition. The boy hurriedly carried the suitcase to the porch, a distance of about 60 feet, whereupon decedent's daughter-in-law told him to go back and help his great-grandmother across the road. When decedent got out of the bus, a Negro passenger got on and the driver closed the door. After the decedent looked "up the road", "down the road", and "into the windshield", she proceeded to go across the road in front of the bus. When she was about the center of the bus, it "suddenly lunged forward and knocked her down." She died almost instantly. The bus proceeded a distance of about 80 feet before it stopped. When the accident occurred, the young boy, who was returning to assist his great-grandmother, had reached a point near the western side of the highway.

The decedent was about five feet, seven inches tall. There was some variation in the testimony as to how closely she passed in front of the bus. One witness said she was a foot in front of it, another said she held her hand on the bus as she passed around it but did not "stoop down". The colored maid who was on the front porch testified on cross examination that the decedent was "stooping down a little bit" and in her opinion, the driver could not have seen her. Several

witnesses said the bus was stopped for a period of about a minute but, of course, this was only a rough estimate.

It is well settled that in determining whether there was error in granting the nonsuit, the foregoing testimony and all reasonable inferences to be drawn therefrom must be considered in the light most favorable to the plaintiff and any conflict in the testimony must be resolved in her favor. If the inferences properly deducible from the evidence are doubtful, or if they tend to show both the driver and decedent guilty of negligence, and there may be a fair difference of opinion as to whose act produced the injury as a direct and proximate cause, then the case should have been submitted to the jury. *Green v. Bolen,* S. C., 115 S. E. (2d) 667, and cases therein cited.

Before discussing the testimony, it may be helpful to determine the degree of care owed by a motor carrier to a passenger alighting from one of its buses. The relation of passenger and carrier ordinarily ends when the passenger steps from a bus into a reasonably safe place on a public highway. 13 C. J. S., Carriers, § 565; 10 Am. Jur., Carriers, Section 1008. But it does not follow that the carrier is then wholly discharged of any duty whatsoever to such passenger. It still owes him the duty of exercising ordinary care to see that after alighting safely he is not in a position or situation as to be imperiled by the starting up of the bus. *Patton v. Minneapolis St. Ry. Co.,* 247 Minn. 368, 77 N. W. (2d) 433, 58 A. L. R. (2d) 921; *Mayor v. St. Louis Public Service Co.,* Mo., 269 S. W. (2d) 101. The care which must be thus exercised toward an alighting passenger must be proportionate to the degree of danger inherent in the particular passenger's personal situation and to his obvious needs.

In *Nygren v. Minneapolis St. Ry. Co.,* 241 Minn. 485, 63 N. W. (2d) 560, 562, the plaintiff, a 73 year old widow, after alighting from a bus was struck by the front of it as she proceeded to cross the street. She brought an action against

the carrier to recover damages for personal injuries sustained. One of the defendant's witnesses testified that the plaintiff crossed "in front of the bus only one foot from its front, where she would have been in a blind spot to the driver." The driver said he never saw plaintiff after she alighted from the bus. In holding that the statutory right of way rule did not apply and that there was no error in refusing defendant's motion for a directed verdict, the Court said:

"While the plaintiff here was crossing the street at a place other than a regular intersection, she was not, necessarily, negligent in doing so. The plaintiff, as pedestrian, and the motorman bore equal duties in the use of the street here; namely, the exercise of ordinary care under the circumstances. The motorman was bound to maintain a lookout for people where he ought to know they are likely to be. This is especially true with reference to passengers discharged from his bus when he is so situated, either because of his own size, the manner in which the motorbus is constructed, or the location where he has stopped it, that he cannot clearly see the street ahead to determine whether it is safe to proceed. Ordinary or reasonable care under those circumstances requires that he make such an observation as will enable him to proceed safely or give adequate and timely warning of his intention to proceed so that those who might be endangered by his movements may escape or avoid the dangers incident thereto. The plaintiff, in crossing the street as she did here, was required to exercise due care for her own safety and yield the right of way to moving automobiles, streetcars, and buses approaching on the street. At the time in question, the defendant company's motorman, having stopped and discharged the passengers where he did, had no immediate greater right upon the street or greater right to its use than did the plaintiff. Each owed the same duty—the exercise of ordinary care under the circumstances."

Assuming, as contended by defendants, that after decedent alighted from the bus, she was in a place of safety and no longer had the status of a passenger,

we still think the Court erred in granting a nonsuit. We would not be justified in concluding that there was no testimony reasonably warranting an inference of negligence on the part of the bus driver. Neither can we say as a matter of law that decedent was guilty of contributory negligence. It may be reasonably inferred that the driver violated Section 2.10 of the safety regulations issued by the Public Service Commission, Volume 7, page 771 of the 1952 Code, which provides: "No motor vehicle shall be set in motion until due caution has been taken to ascertain that the course is clear." It is for the jury to say whether due to her impaired hearing the decedent heard the driver's admonition to go around the back of the bus and after giving this admonition whether the driver was negligent in not thereafter observing the movements of decedent, particularly in view of her age. Since it was raining and the dirt shoulder of the road was wet and perhaps slippery, a jury could reasonably conclude that the driver should have considered the possibility that decedent might cross in front of the bus. A factual issue is also presented as to whether the driver should have seen the deceased as she passed the side door of the bus and went around in front of it. His failure to do so may have been due to the fact that he was collecting the fare from the Negro passenger who had just gotten on the bus, or there may have been some other reason. We simply have no explanation in this record for the sudden start of this bus as the decedent was walking around in front of it. If there were circumstances justifying a failure to see her, they should be known to the driver, but he has not testified. Cf. *Brock v. Carolina Scenic Stages*, 219 S. C. 360, 65 S. E. (2d) 468; *Shepherd v. United States Fidelity & Guaranty Co.*, 233 S. C. 536, 106 S. E. (2d) 381. It is true that the colored maid testified that the decedent was so close to the front of the bus that the driver could not have seen her but this was a mere conclusion which a jury would be at liberty to disregard. Moreover, her testimony is contradicted by that of another witness who said decedent was about a foot in front of the bus. If

the bus was so constructed as to obscure the vision of the driver, it could be reasonably inferred that he should have taken other precautions to see that the way was clear.

Of some analogy is *Gulf Transport Co. v. Allen,* 209 Miss. 206, 46 So. (2d) 436, 437. In that case, on a rainy day, a bus in which a woman 72 years of age was riding stopped off the pavement across the road from a store. She alighted and while trying to cross to the other side of the road, was run over by the bus and killed. When struck she was at a point about half the width of the bus. One witness said she walked "right in front of the bus." Another stated that she was about four feet in front of the bus as she passed around it. The driver testified that he never did see her after she alighted, although he kept a reasonable lookout. According to the plaintiff's testimony, the bus remained stopped about a minute. The estimate of defendant's witnesses varied from one and a half to five minutes. In holding that there was no error in refusing to direct a verdict for the defendant, the Court said that the jury was warranted in finding that decedent "after alighting from the bus, was never out of the range of the driver, before he struck her; (2) that slight attention on his part would have disclosed her presence and danger; (3) that the threatening weather would cause passengers to cross over to the store as quickly as possible, either in the front or the rear of the bus; and (4) that it was negligence to start the bus quickly before making a proper lookout to ascertain where the passengers were."

*Arlington & Fairfax Motor Transportation Co. v. Simmonds,* 182 Va. 796, 30 S. E. (2d) 581, 585, is distinguishable. There the bus had already started moving before the decedent tried to pass in front of it. The Court said that "it is negligence as a matter of law to heedlessly or inadvertently step directly in front of a moving bus."

The danger of moving a motor vehicle where someone in its path cannot be seen is illustrated in *Butler v. Temples,* 227 S. C. 496, 88 S. E. (2d) 586. There the defendant in

backing his car in a yard ran over a two year old child whom he knew had been playing in the yard shortly before but did not see behind his car. Also, see *Green v. Bolen, supra,* S. C., 115 S. E. (2d) 667.

There remains for consideration respondents' contention that the bus driver had the right-of-way under Section 46-435 of the 1952 Code, which provides in part: "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway." As pointed out in *Nygren v. Minneapolis St. Ry. Co., supra,* 241 Minn. 485, 63 N. W. (2d) 560, this statute is not applicable since the bus was standing still when decedent started to cross in front of it.

The order of nonsuit is reversed and the case remanded for a new trial.

STUKES, C. J., and LEGGE, J., concur.

TAYLOR and MOSS, JJ., concur in result.