579 S.E.2d 136

**Jack HURD, Respondent,**

v.

**WILLIAMSBURG COUNTY and Williamsburg County Transit Authority, Appellants.**

No. 3614.

Court of Appeals of South Carolina.

Heard Jan. 15, 2003.
Decided March 17, 2003.
Rehearing Denied April 16, 2003.

600

Charles E. Carpenter, Jr. and S. Elizabeth Brosnan, of Columbia; Robin B. Lilley and Stephen Paul Bucher, of Charleston; for Appellants.

Ladson Fishburne Howell, Jr., and Richard G. Wern, of N. Charleston; Ronnie Alan Sabb, of Kingstree; for Respondent.

ANDERSON, J.:

Jack Hurd brought this tort action against Williamsburg County and Williamsburg County Transit Authority (collectively referred to as the "County"), alleging damages resulting from an automobile-pedestrian collision that occurred when he was struck by an automobile after exiting a bus. A jury trial was held and Hurd was awarded $675,000 in damages. The verdict was reduced under the mandate of the South Carolina Tort Claims Act. The County appeals. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Hurd boarded the County's bus around 6 a.m. on February 1, 1996 to go to work in Myrtle Beach. The bus driver usually drove another route, but was substituting for the regular driver that day. The bus route starts in the Sand Ridge Community, travels through Highway 261 to Highway 24, comes down to Highway 41/51 at Mingo's crossing, then goes through Georgetown and Highway 17 to Myrtle Beach.

On the morning of the accident, the bus driver pulled off onto the shoulder of Highway 41, a two-lane road, after several passengers requested he stop there so that they could get breakfast across the road at Mingo's Store. The normal procedure was for the bus driver to stop further down at the "Park and Ride," which is located on the same side of the road as Mingo's Store. The "Park and Ride" was erected by the County to serve as a transfer station for riders because of the congestion in the Highway 41 area.

After several passengers alighted onto the shoulder, Hurd, who had been sleeping, awoke and asked the bus driver to let him off so that he could also go to Mingo's store. According to the bus driver, he informed Hurd he was going to the "Park and Ride" and that Hurd could disembark there and go to Mingo's. Hurd, however, requested to go with the other passengers.

Hurd exited and walked to the rear of the bus. At trial, he claimed he looked to the left and right and did not see any vehicles on the highway. He stated he began to cross the highway when the bus started to pull away and was at an angle so he could not see to his right. Hurd continued across the highway and was struck by a car coming from the opposite direction. Hurd asserted: "I tried to look around the day that I got hit and my view was blocked, that's why I go [sic] hit." Hurd sustained substantial injuries as a result of being hit.

Booker Pressley, a former director of the County's transit authority, testified that the "Park and Ride" on Highway 41 was built because of the traffic congestion in the area and concern about rider safety. Pressley contended that the transit authority had a policy that the drivers were to let the passengers off at the "Park and Ride." Pressley maintained he issued a written warning to the bus driver following the

accident for failing to discharge the passengers at the "Park and Ride." At his deposition, published to the jury, he declared:

Q. After the establishment of the Park & Ride were the drivers advised that they weren't to use the shoulder of the road to discharge passengers anymore, that they were to use the Park & Ride?

A. We had meetings and the meetings were that every driver would meet down at Mingo's and get down there between the time of a quarter to seven and twenty minutes to seven so they could make their change of the bus. We also talked about you know, it was [sic] thing where we talk about everybody pulling up over there. When we went in there that was a woods area. We were able to get a whole side cleaned up to the store so the passengers wouldn't have to cross the road.

Q. Were the drivers told not to discharge the passengers on the side of the road after the Park & Ride was created?

A. I think every driver was told, and somehow I think they—now, if they was [sic] doing it I didn't know anything about it. Because I used to go down there quite a few times and monitor that because we have some sites in Williamsburg County that's creeping fast. What I mean is there's a lot of traffic and it comes in until you kind of, you know it shoots right up on you.

Q. You were monitoring this area to make sure the drivers weren't discharging passengers on the side of 41?

A. I monitored all areas, Myrtle Beach and all the areas.

. . . .

Q. Is safety a consideration when letting a passenger off the bus?

A. Yes.

Q. In what way?

A. Well, again, just like I said Mingo's is one of those little areas that was congested and that's why we started. What we did was we started a Park & Ride site in the congested area first.

Q. Do you agree that the different discharge areas involve different risks?

A. Yes.

Q. And would you agree that some areas are safer than others?

A. Yes.

Q. Would you agree that the Park & Ride area established behind Mingo's store is a safer area to discharge passengers than on the side of the highway?

A. Yes.

. . . .

Q. Do you have any knowledge about accident or fatalities occurring at that intersection?

A. Well, Mingo's when I first started the transit, they had a stop sign there. Since then I think they had a coupe [sic] of deaths from, not people with transit, but other just drivers. Now they have a blinking red light there. I don't know what has happened but that has always been one of those areas and by me living there I know it because it's an area that serves a lot of log trucks and trucks and if you're a driver a lot of times you see truck and you see one you don't know how many, or you don't how—you don't—strike that—you don't know what's behind it so that was one of the areas that I always had a lot of concern about and one of the reasons I said that I thought he was blessed so much. When we first went out there we started to—we used to let people off on the side and we was [sic] able to get that property to get over there.

Q. Was that a factor in getting the property, were you looking for a safer place to discharge people?

A. That was the right place. That was the place. That was the ideal place. People wanted to use the store and we wanted to have a place where we had a bus coming in from Hemmingway and we had a bus coming in from Morrisville and one coming in from Neesmith all coming in to the same port.

. . . .

Q. My question was, did he violate a policy of the transit authority by discharging passengers on the side of Highway 41 rather than using the Park & Ride?

A. Well, I guess, like I said when we put up the site there was no question about it that the site was there for the use of getting us off the road. Because we didn't just put up a site we created a piece of land and went in there and cleaned up that woods between the store and the Park and Ride site, it's clean to that store. We brought it over there because we didn't want people crossing the road.

Dr. Robert Roberts, an expert in the field of traffic and pedestrian safety design, professed at trial that it was unreasonable for the bus driver to debus the passengers on the shoulder of the highway. Roberts opined that the "Park and Ride" was a safer place for the passengers to be let off the bus. The following exchange occurred:

Q. Go ahead and give [your opinion on whether or not the Park & Ride is a safety device] to me, please sir.

A. Yes, among other things. Park & Rides serve a multitude of functions. In other words where that's precisely what you do, you go park and get on the bus and ride, you have interchanges between busses; and they're located in such a way that you can make these transfers safely. Yes, that's a primary concern. When you say a safety device, the answer to that is yes, but it is also more than that.

Q. Based upon your review of the depositions and the other materials and our personal viewing of the scene, do you have an opinion as to why this traffic safety device of the Park & Ride was established?

A. Well it was established—this particular one?

Q. Yes, sir, this particular one.

A. Based on what I've seen it was for their safety. It is a place where you can get on and off the bus, transfer from bus to another, transfer from an automobile to a bus, or a bus to the automobile and do it safely and have a place to leave your vehicle and ride in the convenience of the bus to some particular bus you want

to go. It's done safely, efficiently for everyone concerned.

. . . .

Q. Is it your opinion that it would be unreasonable for the transit authority to drop off a passenger on the side of the road where there is no Park & Ride in place?

A. It is done, it could be done reasonable. But under the circumstances here I don't consider it reasonable, there is a much better alternative.

Q. What is the alternative?

A. The alternative is the Park & Ride which is just a few hundred feet away. You could stop, allow your passengers to get off the bus in perfect safety, no problems.

. . . .

Q. Dr Roberts, explain to the jury under what circumstances it would be reasonable to drop a passenger off on the side of the road and under what circumstances it would be unreasonable to drop a passenger off on the side of the road.

A. Well you have to keep in mind that this is a rural area where your passengers are going to be getting on and off in rural circumstances. So basically what you want is a location where you can let the passengers off where hopefully you can get the bus completely off the traveled way and still have room for the passengers to get off without ending up in a ditch or something of this type. Then the bus can move off, allow the passengers, if they need to cross the roadway, a clear unobstructed view in either direction so they can cross the road in a location which is reasonably convenient for the passengers. And as I say you have to keep in mind that this is a rural location. It's not like an urban area where you're dropping people off on a curb or a sidewalk. In this particular case I think what makes it unreasonable in my thinking is that you have a facility within a few hundred feet where you can take your bus completely off the roadway, have it in a protected area, where you can have other busses or other vehicles there and passengers can get on and off and transact their business safely and conveniently. So with the Park & Ride

there dropping them off on this curbside, not even a curbside so to speak, roadside to me does not make any sense whatsoever.

. . . .

Q. . . . Is the side of the road, the side of highway 41, safer or less safe than the Park & Ride [?]

Mr. Bucher: Same objection, your honor.

A. It's less safe.

The jury returned a verdict in favor of Hurd, finding that Hurd was 42% at fault in causing his injuries and that the County was 58% at fault. The jury awarded Hurd $675,000 in damages. Following the County's post trial motions, the trial court reduced the award of damages to $250,000, pursuant to the South Carolina Tort Claims Act liability cap.

The County appeals, arguing the trial court erred in failing to direct a verdict because Hurd did not establish that the County breached any duty, that the County's actions were the proximate cause of his injuries, or that the County was more negligent than Hurd.

### STANDARD OF REVIEW

When reviewing a ruling on a motion for directed verdict, this Court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *See F & D Elec. Contractors, Inc. v. Powder Coaters, Inc.,* 350 S.C. 454, 567 S.E.2d 842 (2002); *Wintersteen v. Food Lion, Inc.,* 344 S.C. 32, 542 S.E.2d 728 (2001); *see also Harvey v. Strickland,* 350 S.C. 303, 566 S.E.2d 529 (2002) (in ruling on a motion for directed verdict, trial court is required to view evidence and inferences which reasonably can be drawn therefrom in light most favorable to party opposing motion and to deny motion where either evidence yields more than one inference or its inference is in doubt). In essence, we must determine whether a verdict for a party opposing the motion would be reasonably possible under the facts as liberally construed in his favor. *Hanahan v. Simpson,* 326 S.C. 140, 485 S.E.2d 903 (1997); *Bultman v. Barber,* 277 S.C. 5, 281 S.E.2d 791 (1981).

When the evidence yields only one inference, a directed verdict in favor of the moving party is proper. *Sims v. Giles*, 343 S.C. 708, 541 S.E.2d 857 (Ct.App.2001); *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.*, 343 S.C. 424, 540 S.E.2d 113 (Ct.App.2000). However, if the evidence as a whole is susceptible of more than one reasonable inference, the case must be submitted to the jury. *Quesinberry v. Rouppasong*, 331 S.C. 589, 503 S.E.2d 717 (1998); *Getsinger v. Midlands Orthopaedic Profit Sharing Plan*, 327 S.C. 424, 489 S.E.2d 223 (Ct.App.1997); *see also Heyward v. Christmas*, 352 S.C. 298, 573 S.E.2d 845 (Ct.App.2002) (if the evidence is susceptible of more than one reasonable inference, a jury issue is created and the court may not grant a directed verdict).

When considering directed verdict motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence. *Harvey*, 350 S.C. at 308, 566 S.E.2d at 532; *Creech v. South Carolina Wildlife & Marine Res. Dep't*, 328 S.C. 24, 491 S.E.2d 571 (1997); *Collins v. Bisson Moving & Storage, Inc.*, 332 S.C. 290, 504 S.E.2d 347 (Ct.App.1998). The issue must be submitted to the jury whenever there is material evidence tending to establish the issue in the mind of a reasonable juror. *Hanahan*, 326 S.C. at 149, 485 S.E.2d at 908. Yet, this rule does not authorize submission of speculative, theoretical, and hypothetical views to the jury. *Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 494 S.E.2d 835 (Ct.App. 1997). Our courts have recognized that when only one reasonable inference can be deduced from the evidence, the question becomes one of law for the court. *Id.* A corollary of this rule is that verdicts may not be permitted to rest upon surmise, conjecture, or speculation. *Id.*

In deciding whether to grant or deny a directed verdict motion, the trial court is concerned only with the existence or nonexistence of evidence. *Long v. Norris & Assocs., Ltd.*, 342 S.C. 561, 538 S.E.2d 5 (Ct.App.2000); *Jones v. Gen. Elec. Co.*, 331 S.C. 351, 503 S.E.2d 173 (Ct.App.1998). This Court can only reverse the trial court when there is no evidence to support the ruling below. *Steinke v. South Carolina Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 520 S.E.2d 142 (1999); *Sims*, 343 S.C. at 714, 541 S.E.2d at

861; *Welch v. Epstein,* 342 S.C. 279, 536 S.E.2d 408 (Ct.App. 2000). We must affirm a trial judge's denial of a directed verdict motion when there is evidence to support the court's ruling. *See Strange v. South Carolina Dep't of Hwys. & Pub. Transp.,* 314 S.C. 427, 445 S.E.2d 439 (1994). Accordingly, we must review the evidence to determine whether the trial court properly submitted the case to the jury.

### *LAW/ANALYSIS*

### I.    Breach of Duty

The County contends Hurd failed to present evidence establishing that the County breached any duty of safety it owed to Hurd. Particularly, the County alleges that Hurd was unloaded in a reasonably safe location.

A common carrier has a duty to exercise the highest degree of care towards its passengers. *Singletary v. Atl. Coast Line R.R. Co.,* 217 S.C. 212, 218, 60 S.E.2d 305, 307 (1950); *Thomas v. Atl. Greyhound Corp.,* 204 S.C. 247, 252, 29 S.E.2d 196, 198 (1944); *Poliakoff v. Shelton,* 193 S.C. 398, 408, 8 S.E.2d 494, 498 (1940). "The relation of passenger and carrier ordinarily ends when the passenger steps from a bus into a reasonably safe place on a public highway." *Flynn v. Carolina Scenic Stages,* 237 S.C. 340, 345, 117 S.E.2d 364, 366 (1960); *see* 14 Am.Jur.2d *Carriers* § 752 (2000). However, "it does not follow that the carrier is then wholly discharged of any duty whatsoever to such passenger. It still owes him the duty of exercising ordinary care to see that after alighting safely he is not in a position or situation as to be imperiled by the starting up of the bus." *Flynn,* 237 S.C. at 345, 117 S.E.2d at 366–67. Therefore, the question before this Court is whether or not Hurd presented any evidence establishing that he was let off the bus in an unreasonably dangerous location.

At trial, Hurd presented testimony from Dr. Roberts establishing that it was unwise for the bus driver to allow the passengers to debark the bus on the shoulder of the highway. Additionally, the former director of the County's transit authority stated that it was the transit authority's policy to only let passengers off at the "Park and Ride" on Highway 41 and that Highway 41 was a congested area. Furthermore, the

jury could infer from the mere presence of the "Park and Ride" in the area that it was not safe to allow passengers to exit the bus from the shoulder of the highway. Under our standard of review, we find there was evidence presented to the jury that the County breached its duty of care to Hurd by allowing him to exit from the bus on the shoulder of the highway.

## II. Proximate Cause

The County argues Hurd failed to present any evidence that an act of the County was a proximate cause of his injury.

In a negligence action, the plaintiff must prove proximate cause. *Rush v. Blanchard,* 310 S.C. 375, 426 S.E.2d 802 (1993); *McNair v. Rainsford,* 330 S.C. 332, 499 S.E.2d 488 (Ct.App.1998); *Vinson v. Hartley,* 324 S.C. 389, 477 S.E.2d 715 (Ct.App.1996). Negligence is not actionable unless it proximately causes the plaintiff's injury. *Bishop v. South Carolina Dep't of Mental Health,* 331 S.C. 79, 502 S.E.2d 78 (1998); *Bergstrom v. Palmetto Health Alliance,* 352 S.C. 221, 573 S.E.2d 805 (Ct.App.2002). It is apodictic that a plaintiff may only recover for injuries proximately caused by the defendant's negligence. *Parks v. Characters Night Club,* 345 S.C. 484, 548 S.E.2d 605 (Ct.App.2001). If one neglects a duty which proximately causes injury to another, recovery is warranted. *Hodge v. Crafts–Farrow State Hosp.,* 286 S.C. 437, 334 S.E.2d 818 (1985); *Vinson,* 324 S.C. at 400, 477 S.E.2d at 720.

Proximate cause requires proof of both causation in fact and legal cause. *Oliver v. South Carolina Dep't of Hwys. & Pub. Transp.,* 309 S.C. 313, 422 S.E.2d 128 (1992); *Trivelas v. South Carolina Dep't of Transp.,* 348 S.C. 125, 558 S.E.2d 271 (Ct.App.2001); *Parks,* 345 S.C. at 491, 548 S.E.2d at 609. Causation in fact is proved by establishing the plaintiff's injury would not have occurred "but for" the defendant's negligence. *Oliver,* 309 S.C. at 316, 422 S.E.2d at 130; *Trivelas,* 348 S.C. at 135–36, 558 S.E.2d at 276; *Vinson,* 324 S.C. at 400, 477 S.E.2d at 721.

Legal cause, in contrast to the "but for" nature of causation in fact, is proved by establishing foreseeability.

*Oliver,* 309 S.C. at 316, 422 S.E.2d at 131; *Small v. Pioneer Mach., Inc.,* 329 S.C. at 463, 494 S.E.2d at 842; *see also Trivelas,* 348 S.C. at 136, 558 S.E.2d at 276 (legal cause turns on the issue of foreseeability). The standard by which foreseeability is determined is that of looking to the natural and probable consequences of the complained of act. *Oliver,* 309 S.C. at 316, 422 S.E.2d at 131; *Young v. Tide Craft, Inc.,* 270 S.C. 453, 242 S.E.2d 671 (1978).

The touchstone of proximate cause in South Carolina is foreseeability. *Koester v. Carolina Rental Ctr., Inc.,* 313 S.C. 490, 443 S.E.2d 392 (1994); *Goode v. St. Stephens United Methodist Church,* 329 S.C. 433, 494 S.E.2d 827 (Ct. App.1997). An injury is foreseeable if it is the natural and probable consequence of a breach of duty. *Bergstrom,* 352 S.C. at 230–31, 573 S.E.2d at 809–10; *Trivelas,* 348 S.C. at 136, 558 S.E.2d at 276; *see also Vinson,* 324 S.C. at 400, 477 S.E.2d at 721 (foreseeability is determined by looking to the natural and probable consequences of the act complained of). A plaintiff therefore proves legal cause by establishing the injury in question occurred as a natural and probable consequence of the defendant's negligence. *Newton v. South Carolina Pub. Rys. Comm'n,* 319 S.C. 430, 462 S.E.2d 266 (1995); *McNair,* 330 S.C. at 349, 499 S.E.2d at 497; *Goode,* 329 S.C. at 447, 494 S.E.2d at 834.

A negligent act or omission is a proximate cause of injury if, in a natural and continuous sequence of events, it produces the injury, and without it, the injury would not have occurred. *Vinson,* 324 S.C. at 401, 477 S.E.2d at 721. In other words, if the accident would have happened as a natural and probable consequence, even in the absence of the alleged breach, then a plaintiff has failed to demonstrate proximate cause. Where the injury complained of is not reasonably foreseeable, there is no liability. *Crolley v. Hutchins,* 300 S.C. 355, 387 S.E.2d 716 (Ct.App.1989). In order for conduct to amount to negligence for which compensation can be collected, the defendant must have foreseen, or by the exercise of ordinary care should have foreseen, the probability that his conduct would likely cause injury to another. *Vinson,* 324 S.C. at 401, 477 S.E.2d at 721. One is not charged with foreseeing that which is unpredictable or which would not be

expected to happen as a natural and probable consequence of the defendant's negligent act. *Id.*

Foreseeability is not determined from hindsight, but rather from the defendant's perspective at the time of the alleged breach. *Parks,* 345 S.C. at 491, 548 S.E.2d at 609; *Vinson,* 324 S.C. at 401, 477 S.E.2d at 721; *see also Shepard v. South Carolina Dep't of Corrections,* 299 S.C. 370, 385 S.E.2d 35 (Ct.App.1989) (foreseeability is to be judged from perspective of defendant at time of negligent act, not after injury has occurred). It is not necessary for a plaintiff to demonstrate the defendant should have foreseen the particular event which occurred but merely that the defendant should have foreseen his or her negligence would probably cause injury to someone. *Greenville Mem'l Auditorium v. Martin,* 301 S.C. 242, 391 S.E.2d 546 (1990); *see also Bramlette v. Charter–Medical–Columbia,* 302 S.C. 68, 393 S.E.2d 914 (1990) (although foreseeability of some injury from an act or omission is a prerequisite to establishing proximate cause, plaintiff need not prove that defendant should have contemplated particular event which occurred; defendant may be held liable for anything which appears to have been a natural and probable consequence of his negligence); *Vinson,* 324 S.C. at 400–01, 477 S.E.2d at 721 (foreseeability does not mean that defendant contemplated the event that occurred; it is sufficient that he should have foreseen his negligence would probably cause injury to someone).

Proximate cause is the efficient or direct cause of an injury. *Small,* 329 S.C. at 464, 494 S.E.2d at 843; *Vinson,* 324 S.C. at 401, 477 S.E.2d at 721. Proximate cause does not mean the sole cause. *Small,* 329 S.C. at 464, 494 S.E.2d at 843. The defendant's conduct can be a proximate cause if it was at least one of the direct, concurring causes of the injury. *Id.* The issue of proximate cause may be resolved by direct or circumstantial evidence. *Mahaffey v. Ahl,* 264 S.C. 241, 214 S.E.2d 119 (1975); *Small,* 329 S.C. at 464, 494 S.E.2d at 843.

"Ordinarily, the question of proximate cause is one of fact for the jury and the trial judge's sole function regarding the issue is to inquire whether particular conclusions are the only reasonable inferences that can be drawn from the evidence." *McNair,* 330 S.C. at 349, 499 S.E.2d at 497. Only

in rare or exceptional cases may the question of proximate cause be decided as a matter of law. *Trivelas,* 348 S.C. at 137, 558 S.E.2d at 277; *Ballou v. Sigma Nu Gen. Fraternity,* 291 S.C. 140, 352 S.E.2d 488 (Ct.App.1986); *see also Oliver,* 309 S.C. at 317, 422 S.E.2d at 131 (legal cause is ordinarily a question of fact for the jury; only when the evidence is susceptible to only one inference does it become a matter of law for the court). If there is a fair difference of opinion regarding whose act proximately caused the injury, then the question of proximate cause must be submitted to the jury. *Ballou,* 291 S.C. at 147–48, 352 S.E.2d at 493. The particular facts and circumstances of each case determine whether the question of proximate cause should be decided by the court or by the jury. *Collins v. Bisson Moving & Storage, Inc.,* 332 S.C. 290, 504 S.E.2d 347 (Ct.App.1998); *Small,* 329 S.C. at 464, 494 S.E.2d at 843.

■ Hurd presented evidence, through Pressley and Roberts, that the County's letting Hurd off on the shoulder of Highway 41 was a proximate cause of his injury. Specifically, Hurd established causation in fact and legal cause, the two elements of proximate cause. Hurd demonstrated that the injury would not have happened "but for" the County's discharging him on the shoulder of the road instead of at the "Park and Ride." Pressley attested that the "Park and Ride" was created so passengers would not have to cross the road to go to Mingo's Store, the drivers were told not to unload the passengers on the side of the road after the "Park and Ride" was created, he monitored the area to make sure the drivers were not alighting passengers on the side of the road, and the "Park and Ride" was created because it was a safer place to discharge passengers than the shoulder of the road. Roberts professed that under the circumstances of a "Park and Ride" being in place nearby, it was unreasonable for the County to drop off passengers on the side of the road. Hurd established the requisite foreseeability for legal cause by Pressley's testimony that the County created the "Park & Ride" as a safety measure in the congested area. Hurd has, therefore, presented evidence that allows one to infer that the County's action was a proximate cause of the accident.

### III. Comparative Negligence

The County argues that Hurd did not present any evidence that the County's negligence exceeded Hurd's negligence.

Comparative negligence is the law in South Carolina. *Nelson v. Concrete Supply Co.*, 303 S.C. 243, 399 S.E.2d 783 (1991). The jury must apportion fault between the plaintiff and defendant in a negligence action. *Clark v. Cantrell*, 339 S.C. 369, 529 S.E.2d 528 (2000). Under the comparative negligence doctrine, the plaintiff's negligence does not automatically bar recovery by the plaintiff as long as the plaintiff's negligence is not greater than that of the defendant. *Trivelas v. South Carolina Dep't of Transp.*, 348 S.C. 125, 558 S.E.2d 271 (Ct.App.2001); *see also Thomasko v. Poole*, 349 S.C. 7, 561 S.E.2d 597 (2002) (under comparative negligence, plaintiff's contributory negligence does not bar recovery unless that negligence exceeds defendant's). Stated differently, a plaintiff may only recover damages if his own negligence is not greater than that of the defendant. *Bloom v. Ravoira*, 339 S.C. 417, 529 S.E.2d 710 (2000). The plaintiff's damages are reduced in proportion to the amount of his or her negligence. *Clark*, 339 S.C. at 378, 529 S.E.2d at 533. The burden of proof is on the plaintiff to establish the negligence of the defendant. *Ross v. Paddy*, 340 S.C. 428, 532 S.E.2d 612 (Ct.App.2000).

Generally, "under a 'less than or equal to' comparative negligence rule, determination of respective degrees of negligence attributable to the plaintiff and the defendant presents a question of fact for the jury, at least where conflicting inferences may be drawn." *Brown v. Smalls*, 325 S.C. 547, 559, 481 S.E.2d 444, 451 (Ct.App.1997); *see also Creech v. South Carolina Wildlife and Marine Res. Dep't*, 328 S.C. 24, 491 S.E.2d 571 (1997) (comparison of a plaintiff's negligence with that of the defendant is a question of fact for the jury to decide). "Accordingly, apportionment of negligence, which determines both whether a plaintiff is barred from recovery or can recover some of his damages and the proportion of damages to which he is entitled, is usually a function of the jury." *Brown*, 325 S.C. at 559, 481 S.E.2d at 451. "In a comparative negligence case, the trial court should only determine judgment as a matter of law if the sole

reasonable inference which may be drawn from the evidence is that the plaintiff's negligence exceeded fifty percent." *Bloom,* 339 S.C. at 422, 529 S.E.2d at 713; *see also Thomasko,* 349 S.C. at 11, 561 S.E.2d at 599 (in comparative negligence case, trial court should grant motion for directed verdict if sole reasonable inference from evidence is that non-moving party's negligence exceeded fifty percent).

The testimony of Pressley is overwhelming that the County violated its own safety policy by alighting passengers on the shoulder of the road instead of at the "Park and Ride." Rather than discharge the passengers at the "Park and Ride," which was constructed to insure passenger safety, the driver decided to violate the County's policies and debus the passengers on the shoulder of the road. In addition, Roberts concluded that it was unreasonable and did "not make any sense whatsoever" to discharge passengers on the roadside rather than at the "Park and Ride." Under the facts of this case, we find Hurd presented evidence that allows a jury to draw a reasonable inference that the County's negligence was greater than Hurd's negligence.

## CONCLUSION

Accordingly, the trial court did not err in failing to direct a verdict in favor of the County. The decision of the trial court is

**AFFIRMED.**

HEARN, C.J., concurs.

CURETON, J., dissents in a separate opinion.

CURETON, J., dissenting:

I respectfully dissent.

### I.

The majority contends that Hurd produced sufficient evidence to establish that he was let off the bus in an unreasonably dangerous location. I disagree.

At trial, Hurd offered the deposition of Booker Pressley, the former director of Williamsburg County's transit authority.

Pressley stated that the area in which the "Park and Ride" was created was congested. Pressley attested that the "Park and Ride" was created so that the passengers would not have to cross the road to go to Mingo's store, and it was also established to provide the County with a safer place to discharge its passengers than on the side of the highway.

Hurd also presented testimony from Dr. Roberts, an expert in the field of traffic and pedestrian safety design, that it was unwise for the bus driver to have allowed passengers to disembark from the bus on the shoulder of the highway when there was a "Park and Ride" available. However, Roberts further opined that it would be reasonable to drop passengers off on the side of the road under the following circumstances:

> [K]eep in mind that this is a rural area where your passengers are going to be getting on and off in rural circumstances. So ... what you want is a location where you can let the passengers off where hopefully you can get the bus completely off the traveled way and still have room for the passengers to get off without ending up in the ditch or something of this type. Then the bus can move off, allow the passengers, if they need to cross the roadway, a clear unobstructed view in either direction so they can cross the road in a location which is reasonably convenient for the passengers.

At trial Appellant presented evidence which clearly showed that the shoulder of the road was adequate in size to allow the bus space to pull completely off the roadway while still having adequate room for passengers to disembark without stepping into a ditch, etc. The shoulder was also sufficient to enable the bus to reenter the roadway, while at the same time allowing the passenger to safely stand in the shoulder and view both lanes of traffic so that the passenger could then cross the roadway in a reasonably convenient location. The majority points to the fact that when the bus moved to reenter the highway, the bus was at an angle and Hurd testified he was unable to see to his right. However, there is no evidence to show that the bus pulled onto the highway into the oncoming lane of traffic traveling from the right and blocked Hurd's view in that manner.

A common carrier has a duty to exercise the highest degree of care towards its passengers. *Singletary v. Atl. Coast Line R.R. Co.*, 217 S.C. 212, 218, 60 S.E.2d 305, 307 (1950). However, "the relation of passenger and carrier ordinarily ends when the passenger steps from a bus into a reasonable safe place on a public highway." *Flynn v. Carolina Scenic Stages*, 237 S.C. 340, 345, 117 S.E.2d 364, 366 (1960). *Accord Harris v. Atl. Greyhound Corp.*, 243 N.C. 346, 90 S.E.2d 710, 713 (1956) (finding bus company owes a passenger duty to provide a safe landing, but once passenger has alighted safely to a place of safety, relationship of carrier and passenger ends).

The extent of Pressley and Roberts's testimony was not that this particular shoulder was unsafe in and of itself, but that this shoulder was unreasonably dangerous in light of the fact that there was a safer location, a "Park and Ride," a few hundred feet away. However, the threshold that must be met was that the carrier breached a duty to Hurd because the carrier let him off the bus in an unreasonably dangerous location. The evidence presented by Hurd does not meet this standard.

## II.

The majority found that Hurd presented evidence that allowed an inference that the County's actions were the proximate cause of the accident and that the county's negligence was greater than Hurd's negligence. I disagree.

Although comparison of a plaintiff's negligence with that of a defendant is ordinarily a question for the jury, the trial court should determine this question as a matter of law if the "sole reasonable inference which may be drawn from the evidence is that the plaintiff's negligence exceeded fifty percent." *Bloom v. Ravoira*, 339 S.C. 417, 422, 529 S.E.2d 710, 713 (2000). "Where evidence of the plaintiff's *greater* negligence is overwhelming, evidence of slight negligence on the part of the defendant is simply not enough for a case to go to the jury." *Id.* at 424, 529 S.E.2d at 714.

Hurd testified that he did not have a clear view of the highway when he began to cross the street to reach Mingo's store. He stated that he continued to cross the highway even though the bus was blocking his ability to see oncoming traffic.

Rather than wait a brief moment on the shoulder for the bus to pull away, Hurd chose to cross the highway despite his obstructed view. Furthermore, Hurd requested to be let out on the shoulder even though the driver informed him that he was driving to the "Park and Ride" where Hurd could have safely exited the bus and walked to Mingo's store. Hurd's own testimony established that he attempted to cross the highway in an unreasonable and unsafe manner.

A common carrier of passengers is due such passengers the highest degree of care, but is not an insurer of the safety of passengers under all circumstances.... In an action in tort based on negligence, the negligence of the defendant must be the proximate cause of the injury to the plaintiff. Even though there may be some testimony from which it could be inferred that a defendant was negligent, a plaintiff cannot unnecessarily and consciously take a risk which may or may not result in injury, and when it does result in injury, then recover damages therefor against a defendant. In other words, the law requires that a passenger ... should use every reasonable care to avoid injury to himself, and if he fails to use such care as a man of ordinary prudence and caution would have used under the surrounding circumstances, and is injured as a result thereof, he cannot recover.

*Singletary,* 217 S.C. at 218–19, 60 S.E.2d at 307–308 (1950). Under the facts of this case, I find that Hurd failed to present evidence that the carrier's negligence was the proximate cause of his injuries or that the County's negligence was greater than his own. Accordingly, the trial court erred in failing to direct a verdict in favor of the County.

I would **REVERSE** and enter judgment for Appellant.